## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JIMMY LEE CRAWFORD, AS** | : | |
| **ADMINISTRATOR OF THE ESTATE** | : | |
| **OF JAMAL CRUMMEL, DECEASED** | : | **CIVIL ACTION NO.** |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **DAUPHIN COUNTY** | : | **JURY TRIAL DEMANDED** |
| **and** | : | |
| **PRIMECARE MEDICAL, INC.** | : | |
| **and** | : | |
| **WARDEN GREGORY BRIGGS** | : | ***Electronically Filed*** |
| **and** | : | |
| **CEO THOMAS WEBBER, ESQUIRE** | : | |
| **and** | : | |
| **COO TODD HASKINS** | : | |
| **and** | : | |
| **CORPORATE MEDICAL DIRECTOR,** | : | |
| **JOHN DOE** | : | |
| **and** | : | |
| **MEDICAL PROVIDERS KATIE MCGINN** | : | |
| **JESSICA NYE, AUTUMN BRENNAN, EMT,** | : | |
| **ISAAC MOHR, CHEREE SULTZBACH,** | : | |
| **LAURI CASE, PMHNP-BC, GARRETT** | : | |
| **ROSAS, PsyD, SHADE CRAWFORD, PA,** | : | |
| **MELISSA LEHMAN, RN, TIA DRABICH,** | : | |
| **ADDONNA THOMAS, LPN, JOCELYN** | : | |
| **GRUBE, LPN, KAYLA ZEIDERS-** | : | |
| **HEICHEL, LPN,     MALLORY STOKES,** | : | |
| **LPN, MICHELLE MYERS, NICOLE** | : | |
| **MAGWOOD, LPN, SUSAN DELOE, LPN,** | : | |
| **ADRIENNE FREEMAN, NP, NICOLE** | : | |
| **GALLUP, CARLA ROTHERMAN, ENOS** | : | |
| **MARTIN, MD, DIANE WOLFE, RN-HSA,** | : | |
| **TYKEISHA METZ, MA, JOHANNA** | : | |
| **REIDEL, MA, STEPHANIE DIETZ, RN,** | : | |
| **ROBERT NICHOLS, PSY.D., KATHRYN** | : | |
| **SCIOTTI, CMA, MILDRED MONTALVO,** | : | |
| **MA, CLAUDIA JURADO, DIANA** | : | |

**CORNEJO, MARK HANEY, LESLIE**            :
**IRONS, LPN, SHAYNE GOODMAN,**            :
**KENNEDY CORLISS, SHARON**                :
**CHRISTIE, SEC/MA, BELINDA**              :
**CALHOUN, LPN, MARIELLE RITCHIE,**        :
**ANNA BORDNER, LPN, RYAN SCHMUCK,**       :
**RN, EUGENIA FRANKLIN, LPN,**             :
**TASHAWANA GORDON, MA, JOHN/JANE**        :
**DOES # 1-10**                            :
                                           :
                **Defendants**             :
_____

## COMPLAINT

### I.      PRELIMINARY STATEMENT

On January 31, 2022, Decedent, Jamal Crummel ("Decedent" or "Mr.

Crummel"), a pretrial detainee, died in Dauphin County Prison ("DCP") from

hypothermia and numerous serious medical conditions that went untreated by

Defendants. Plaintiff, Jimmy Lee Crawford, brings this lawsuit against Defendants

on behalf of his son, Jamal Crummel, pursuant to 42 U.S.C. § 1983, alleging Due

Process claims for Inadequate Medical Care and Inhuman Conditions of

Confinement, as well as a claim under the Americans with Disability Act ("ADA")

and numerous Pennsylvania State Law Claims. The Inadequate Medical Care and

ADA claims stem from Defendant's failure to treat and accommodate Mr.

Crummel's schizophrenia, decompensating mental condition, and Steven Johnson

Syndrome ("SJS")/Toxic Epidermal Necrolysis ("TEN"), which is a serious, life-

threatening, extremely painful skin disease that damages the skin and mucous membranes and results in rashes, blisters and peeling skin that resembles severe hot water burns. The inhuman conditions of confinement claim stems from Mr. Crummel's incarceration in a cell, by himself, for twenty-four hours a day, that was covered in his feces, urine, and water. Mr. Crummel was required to endure these conditions suffering from a painful, potentially fatal skin disease, during the winter months of December and January, wearing a tee shirt and thin prison pants, in a prison cell that had no heat and/or inadequate heat, resulting in his death by hypothermia.

## II.    JURISDICTION

1.    This Court has jurisdiction over the subject matter of this Complaint under 42 U.S.C § 1983 and 28 U.S.C. §§ 1331, 1343(a)(3), 1343 (a)(4) and 1367(a).

2.    Venue is proper pursuant to 28 U.S.C. § 1391(b) because the cause of action upon which the complaint is based arose in Dauphin County, Pennsylvania, which is in the Middle District of Pennsylvania.

## III.    PARTIES

3.    Plaintiff, Jimmy Lee Crawford, is an adult citizen and resident of the State of Pennsylvania and was at all relevant times the father of Jamal Crummel, and the administrator of his estate.

4.     At all relevant times, Jamal Crummel was a pretrial detainee at Dauphin County Prison, who was under the care, custody and control of Defendants.

5.     Defendant, Dauphin County, is an entity or political subdivision organized and existing under the laws of the Commonwealth of Pennsylvania, and at all relevant times owned, operated, managed, maintained, and was otherwise responsible for the pretrial detainees at DCP, including the Deceased.

6.     At all relevant times, Defendant Dauphin County acted or failed to act through its employees, agents, servants, and/or contactors, then and there acting in the course and scope of their employment, agency, servanthood, and/or contract, including but not limited to the individually named defendants.

7.     At all relevant times, Defendant Dauphin County was charged with housing, supervising, and caring for the pretrial detainees at "DCP" and they delegated their constitutional duty of providing medical care of said pretrial detainees to Defendant PrimeCare Medical, Inc.

8.     At all relevant times, Defendant Dauphin County was charged with maintaining DPC, including ensuring that the jail cells were clean and habitable, and had sufficient heat during the winter months.

9.     Defendant, PrimeCare Medical, Inc. ("PrimeCare"), is a business entity organized and existing under the laws of the Commonwealth of Pennsylvania, with its principal place of business located in Harrisburg, PA.

10.     At all relevant times, Defendant "PrimeCare" acted or failed to act through its employees, agents, servants, and/or contactors, then and there acting in the course and scope of their employment, agency, servanthood, and/or contract, including but not limited to the individually named defendants.

11.     At all times, Defendants Dauphin County and "PrimeCare" were responsible for the testing, hiring, training, supervising, and disciplining individuals staffed at "DCP," including, but not limited to, the named individual defendants.

12.     At all relevant times, Defendant "PrimeCare" was performing a traditional governmental function, pursuant to contract, in joint participation with Defendant Dauphin Count and therefore was a state actor, acting under color of state law.

13.     Defendant Warden Gregory Briggs is an adult individual and resident of the Commonwealth of Pennsylvania, who, at all relevant times, was employed by Defendant Dauphin County, was acting under color of state law, and had final decision-making authority at "DCP" over all policies and issues relevant to the instant complaint. Warden Gregory Biggs is being sued in both his individual and official capacities.

14.     Defendants, CEO Thomas Webber, Esquire, COO Todd Haskins, and Corporate Medical Director John Doe, are adult individuals and residents of the Commonwealth of Pennsylvania, who, at all relevant times, were employed by

Defendant "PrimeCare" and were acting under color of state law and had final

decision-making authority at PrimeCare over all policies and issues relevant to the

instant complaint. Defendants, CEO Thomas Webber, Esquire, COO Todd Haskins,

and Corporate Medical Director John Doe, are being sued in their individual and

official capacities.

15.     Defendant Medical Providers Katie McGinn, Jessica Nye, Autumn

Brennan, EMT, Isaac Mohr, Cheree Sultzbach, Lauri Case, PMHNP-BC, Garrett

Rosas, PsyD., Shade Crawford, PA, Melissa Lehman, RN, Tia Drabich, Addonna

Thomas, LPN, Jocelyn Grube, LPN, Kayla Zeiders-Heichel, LPN, Mallory Stokes,

LPN, Michelle Myers, Nicole Gallup, Carla Rotherman, Enos Martin, MD, Diane

Wolfe, RN-HSA, Tykeisha Metz, MA, Johanna Reidel, MA, Stephanie Dietz, RN,

Robert Nichols, PsyD., Kathryn Sciotti, CMA, Mildred Montalvo, MA, Claudia

Jurado, Diana Cornejo, Mark Haney, Leslie Irons, LPN, Shayne Goodman, Kennedy

Corliss, Sharon Christie, SEC/MA, Belinda Calhoun, LPN, Marielle Ritchie, Anna

Bordner, LPN, Ryan Schmuck, RN, Eugenia Franklin, LPN, and Tashawana Gordon,

MA, and John/Jane Does # 1-10 (so designated by fictitious names because Plaintiff,

despite the exercise of reasonable diligence, was unable to learn their identities), are

adult individuals and residents of the Commonwealth of Pennsylvania, who, at all

relevant times, were employed as medical providers at DCP by Defendant PrimeCare

and/or Dauphin County.

16.     At all relevant times, Defendant Medical Providers Katie McGinn, Jessica Nye, Autumn Brennan, EMT, Isaac Mohr, Cheree Sultzbach, Lauri Case, PMHNP-BC, Garrett Rosas, PsyD., Shade Crawford, PA, Melissa Lehman, RN, Tia Drabich, Addonna Thomas, LPN, Jocelyn Grube, LPN, Kayla Zeiders-Heichel, LPN, Mallory Stokes, LPN, Michelle Myers, Nicole Gallup, Carla Rotherman, Enos Martin, MD, Diane Wolfe, RN-HSA, Tykeisha Metz, MA, Johanna Reidel, MA, Stephanie Dietz, RN, Robert Nichols, PsyD., Kathryn Sciotti, CMA, Mildred Montalvo, MA, Claudia Jurado, Diana Cornejo, Mark Haney, Leslie Irons, LPN, Shayne Goodman, Kennedy Corliss, Sharon Christie, SEC/MA, Belinda Calhoun, LPN, Marielle Ritchie, Anna Bordner, LPN, Ryan Schmuck, RN, Eugenia Franklin, LPN, and Tashawana Gordon, MA, and John/Jane Does # 1-10 were acting within the course and scope of their employment, under the color of state law, and pursuant to the customs, policies, and practices of Defendant Dauphin County and/or Defendant "PrimeCare".  They are being sued in their individual capacities.

## IV. OPERATIVE FACTS

17.     On September 15, 2021, Mr. Crummel, a 45-year-old male, was arrested on numerous charges and committed to DCP.

18.     This was not the Decedents first incarceration at DCP, and based on his prior incarceration at the prison, it was noted that Mr. Crummel suffered from

schizophrenia, and that during his prior incarceration he had psychological/mental health issues, for which he was taking Haldol and Seroquel, as well as hypertension.

19.     During the intake performed during September 12, 2021 incarceration, it was noted that the Decedent was experiencing signs of mental health illness, had been hospitalized on at least three different occasions in psychiatric hospitals for serious mental health issues, and was taking Haldol.

20.     At the time of his incarceration, Mr. Crummel was receiving social security disability benefits for his schizophrenia and other serious mental health issues.

21.     The Decedent's schizophrenia and other serious mental health issues constituted a recognized disability under the ADA as well as constituting a serious medical condition/need.

22.     Based on his intake, Mr. Crummel was placed on suicide watch.

23.     In addition, the intake performed during September 12, 2021, incarceration noted that at the time of his commitment, Mr. Crummel did not have any rashes.

24.     The Decedent was taken off suicide watch on September 22, 2021.

25.     On September 25, 2021, Decedent tested positive for COVID-19, and because his oxygen levels were between 78% and 87%, he was taken to the Hospital (UPMC Harrisburg) for treatment.

26.     At the Hospital, the Decedent developed Pneumonia, and after three days in the Hospital, he was returned to DCP, and placed in isolation because he was still testing positive for COVID-19.

27.     On November 11, 2021, Mr. Crummel submitted a sick call request regarding a rash, tenderness and bleeding in his scrotum area.

28.     Pursuant to the sick call request, the Decedent met with Defendant Marielle Ritchie on November 12, 2021, who did not examine Mr. Crummel's scrotum area, or diagnosis his condition.

29.     Instead, without examining or diagnosing the Decedent, Defendant Ritchie ordered Mr. Crummel Bacitracin.

30.     The order for Bacitracin was not approved, and the Decedent never received it.

31.      At the time the Decedent was seen by Defendant Ritchie on November 12, 2021, his rash, tenderness, and bleeding, which were left undiagnosed, were symptoms of Steven Johnson Syndrome ("SJS"), a serious medical condition that Mr. Crummel was suffering from that can be fatal, and if left untreated becomes extremely painful and causes the skin to blister and peel off.

32.     Despite the Decedent's symptoms, neither Defendant Ritchie, nor any of the other named Defendants, examined, diagnosed, or treated the Decedent's serious

medical condition, namely, SJS, and were deliberately indifferent to his serious, life-
threatening medical condition and needs.

33.    On December 11/12, 2021, Mr. Crummel's mental and physical health
visibly began to deteriorate; he stopped eating, and began yelling obscenities,
banging on the door, drawing on the walls of his cell with his feces and urinating in
his cell.

34.    Defendants Medical Providers Katie McGinn and/or Jessica Nye and/or
Autumn Brennan, EMT and/or Isaac Mohr and/or Cheree Sultzbach and/or Lauri
Case PMHNP-BC and/or Garrett Rosas, PsyD. and/or Shade Crawford, PA and/or
Melissa Lehman, RN and/or Tia Drabich and/or Addonna Thomas, LPN and/or
Jocelyn Grube, LPN and/or Kayla Zeiders-Heichel, LPN and/or Mallory Stokes
and/or LPN and/or Michelle Myers and/or Nicole Gallup and/or Carla Rotherman
and/or Enos Martin, MD and/or Diane Wolfe, RN-HAS and/or Tykeisha Metz, MA
and/or Johanna Reidel, MA and/or Stephanie Dietz, RN and/or Robert Nichols and/or
PsyD. and/or Kathryn Sciotti, CMA and/or Mildred Montalvo, MA and/or Claudia
Jurado and/or Diana Cornejo and/or Mark Haney and/or Leslie Irons and/or LPN
and/or Shayne Goodman and/or Kennedy Corliss and/or Sharon Christie and/or
SEC/MA and/or Belinda Calhoun, LPN and/or Marielle Ritchie and/or Anna
Bordner, LPN and/or Ryan Schmuck, RN and/or Eugenia Franklin, LPN and/or
Tashawana Gordon, MA and/or John/Jane Does # 1-10 knew that the Decedent

suffered from schizophrenia and other serious mental health issues from his prior

incarceration at DCP, and his current intake at DCP, and further knew that his

conduct was related to a serious schizophrenic/bipolar episode, and despite being

responsible for Mr. Crummel's treatment, with deliberate indifference ignored his

symptoms and failed provide him any treatment for his breakdown, including, but not

limited to failing to refer him to a psychiatrist for a mental health evaluation or

having him 302'd and sent to psychiatric hospital.

35.    On December 13, 2021, Defendant Medical Provider Cheree Sultzbach

noted that the Decedent was purposefully flooding his cell with water to the point that

the water was leaking out under the cell door and noted that Mr. Crummel was

severely agitated and not responding to external stimuli.

36.    Despite the fact that the Decedent was visibly decompensating and

suffering a major mental breakdown, neither Defendant Medical Provider Sultzbach,

who witnessed Mr. Crummel's breakdown, nor Defendants Medical Providers Katie

McGinn and/or Jessica Nye and/or Autumn Brennan, EMT and/or Isaac Mohr and/or

Lauri Case PMHNP-BC and/or Garrett Rosas, PsyD. and/or Shade Crawford, PA

and/or Melissa Lehman, RN and/or Tia Drabich and/or Addonna Thomas, LPN

and/or Jocelyn Grube, LPN and/or Kayla Zeiders-Heichel, LPN and/or Mallory

Stokes and/or LPN and/or Michelle Myers and/or Nicole Gallup and/or Carla

Rotherman and/or Enos Martin, MD and/or Diane Wolfe, RN-HAS and/or Tykeisha

Metz, MA and/or Johanna Reidel, MA and/or Stephanie Dietz, RN and/or Robert Nichols and/or PsyD. and/or Kathryn Sciotti, CMA and/or Mildred Montalvo, MA and/or Claudia Jurado and/or Diana Cornejo and/or Mark Haney and/or Leslie Irons and/or LPN and/or Shayne Goodman and/or Kennedy Corliss and/or Sharon Christie and/or SEC/MA and/or Belinda Calhoun, LPN and/or Marielle Ritchie and/or Anna Bordner, LPN and/or Ryan Schmuck, RN and/or Eugenia Franklin, LPN and/or Tashawana Gordon, MA and/or John/Jane Does # 1, who were also aware that Mr. Crummel was suffering a serious mental breakdown, either through witnessing his conduct or the medical documentation regarding his behavior, made any attempt to treat the Decedent's serious mental health issues or accommodate his schizophrenia and other serious mental health issues by providing him the care and treatment he needed.

36.     Instead, Defendants Medical Provider Sultzbach and Defendants Medical Providers Katie McGinn and/or Jessica Nye and/or Autumn Brennan, EMT and/or Isaac Mohr and/or Lauri Case PMHNP-BC and/or Garrett Rosas, PsyD. and/or Shade Crawford, PA and/or Melissa Lehman, RN and/or Tia Drabich and/or Addonna Thomas, LPN and/or Jocelyn Grube, LPN and/or Kayla Zeiders-Heichel, LPN and/or Mallory Stokes and/or LPN and/or Michelle Myers and/or Nicole Gallup and/or Carla Rotherman and/or Enos Martin, MD and/or Diane Wolfe, RN-HAS and/or Tykeisha Metz, MA and/or Johanna Reidel, MA and/or Stephanie Dietz, RN

and/or Robert Nichols and/or PsyD. and/or Kathryn Sciotti, CMA and/or Mildred

Montalvo, MA and/or Claudia Jurado and/or Diana Cornejo and/or Mark Haney

and/or Leslie Irons and/or LPN and/or Shayne Goodman and/or Kennedy Corliss

and/or Sharon Christie and/or SEC/MA and/or Belinda Calhoun, LPN and/or

Marielle Ritchie and/or Anna Bordner, LPN and/or Ryan Schmuck, RN and/or

Eugenia Franklin, LPN and/or Tashawana Gordon, MA and/or John/Jane Does # 1,

were deliberately indifferent to Mr. Crummel's serious medical needs and allowed

him to remain in a damp/wet prison cell covered in feces and urine.

37.    At the time Mr. Crummel was being housed in the damp/wet prison cell

covered in feces and urine on December 13, 2021, DCP had no heat or inadequate

heat in the prison cells, and more specifically in the Decedent's prison cell, and the

average temperature for the day was 38.5 degrees Fahrenheit.

38.    At the time Mr. Crummel was being housed in the damp/wet prison cell

covered in feces and urine on December 13, 2021, DCP was so cold, the guards and

other prison personnel were issued thermal clothing and winter parkas, which they

wore while doing their jobs, while the prisoners, including the Decedent, were

required to wear tee shirts and thin prison pants that resembled medical scrubs.

39.    On December 15, 2021, Mr. Crummel vomited several times during the

night, and Defendant Medical providers Cheree Sultzach, LPN, Susan Deloe, LPN,

and Lauri Case, PMHNP-BC reported that the Decedent's cell had a pungent smell,

and there was vomit, food, urine, feces and water on the floor, and also that his

physical health was rapidly declining.

40.     Upon examination, Mr. Crummel's blood pressure was 188/102 and

pulse rate 56, he was cold to the touch, had a swollen right hand, slurred speech,

lethargy, confusion, his pupils were slow to react, and he was having difficulty

following commands and standing.

41.     As a result of the Decedent's rapidly declining physical condition, he

was taken to the Hospital, where he stayed for less than 24 hours, and it was

determined that he had "low potassium".

42.     Upon being returned to DCP, the Decedent's symptoms had not

resolved, and on December 17, 2021, Defendant Medical Provider Lauri Case,

PMHNP-BC noted that Mr. Crummel's cell was still flooded and scattered with food

debris.

43.     Despite the fact the Decedent's symptoms had not resolved, and his cell

was flooded and littered with food debris, feces and urine, neither Defendant Medical

Provider Lauri Case, PMHNP-BC, nor Defendants Medical Provider Sultzbach

and/or Katie McGinn and/or Jessica Nye and/or Autumn Brennan, EMT and/or Isaac

Mohr and/or Garrett Rosas, PsyD. and/or Shade Crawford, PA and/or Melissa

Lehman, RN and/or Tia Drabich and/or Addonna Thomas, LPN and/or Jocelyn

Grube, LPN and/or Kayla Zeiders-Heichel, LPN and/or Mallory Stokes and/or LPN

and/or Michelle Myers and/or Nicole Gallup and/or Carla Rotherman and/or Enos Martin, MD and/or Diane Wolfe, RN-HAS and/or Tykeisha Metz, MA and/or Johanna Reidel, MA and/or Stephanie Dietz, RN and/or Robert Nichols and/or PsyD. and/or Kathryn Sciotti, CMA and/or Mildred Montalvo, MA and/or Claudia Jurado and/or Diana Cornejo and/or Mark Haney and/or Leslie Irons and/or LPN and/or Shayne Goodman and/or Kennedy Corliss and/or Sharon Christie and/or SEC/MA and/or Belinda Calhoun, LPN and/or Marielle Ritchie and/or Anna Bordner, LPN and/or Ryan Schmuck, RN and/or Eugenia Franklin, LPN and/or Tashawana Gordon, MA and/or John/Jane Does # 1, all of whom were responsible for treating the Decedent and were aware of his declining health, and also were aware of the deplorable, inhuman condition of his cell from the medical records, made any effort to treat Mr. Crummel for his declining health or made any effort to alleviate the inhuman conditions in his cell.

44.    Instead, Defendant Medical Provider Lauri Case, PMHNP-BC and/or Sultzbach and/or Katie McGinn and/or Jessica Nye and/or Autumn Brennan, EMT and/or Isaac Mohr and/or Garrett Rosas, PsyD. and/or Shade Crawford, PA and/or Melissa Lehman, RN and/or Tia Drabich and/or Addonna Thomas, LPN and/or Jocelyn Grube, LPN and/or Kayla Zeiders-Heichel, LPN and/or Mallory Stokes and/or LPN and/or Michelle Myers and/or Nicole Gallup and/or Carla Rotherman and/or Enos Martin, MD and/or Diane Wolfe, RN-HAS and/or Tykeisha Metz, MA

and/or Johanna Reidel, MA and/or Stephanie Dietz, RN and/or Robert Nichols and/or

PsyD. and/or Kathryn Sciotti, CMA and/or Mildred Montalvo, MA and/or Claudia

Jurado and/or Diana Cornejo and/or Mark Haney and/or Leslie Irons and/or LPN

and/or Shayne Goodman and/or Kennedy Corliss and/or Sharon Christie and/or

SEC/MA and/or Belinda Calhoun, LPN and/or Marielle Ritchie and/or Anna

Bordner, LPN and/or Ryan Schmuck, RN and/or Eugenia Franklin, LPN and/or

Tashawana Gordon, MA and/or John/Jane Does # 1, ignored the Decedent's visibly

declining health and the inhuman conditions in his cell, and were deliberately

indifferent to his serious medical needs and the inhuman conditions in which Mr.

Crummel was being housed.

45.    On December 19, 2021, Defendant Medical Provider Tia Drabich and

Stephanie Deitz, RN., requested permission to enter the Decedent's cell to conduct a

physical examination, and they discovered that Mr. Crummel had slurred speech, dry

oral mucosa, macerated skin on his hands and feet, incontinence, tachycardia, was

breathing abnormally and smelled of urine.

46.    The cold, unsanitary, wet conditions of the Decedent's cell, which all of

the Defendants were aware of through the medical records, exacerbated and

accelerated Mr. Crummel's declining physical and mental health.

47.     Defendant COO Todd Hoskins was contacted regarding the condition that the Decedent was found in on December 19, 2021, and Mr. Crummel was taken to the Hospital (UPMC Harrisburg).

48.     Upon arrival at the hospital, it was noted that the Decedent was bradycardic (had a slow heart rate) and hypotensive (abnormally low blood pressure), appeared physically ill, and had a core body temperature of 85 degrees Fahrenheit.

49.     After further examination, it was discovered that Mr. Crummel had cherry red non-blanching rash on his medial thighs, tip of his penis, buttocks and lower back region, and his skin was sloughing on is bilateral wrists and feet.

50.     Testing indicated that the Decedent had an acute kidney injury and leukopenia, abnormal blood glucose, lactic acid, c-reactive protein and creatine readings.

51.     The initial diagnosis was that Mr. Crummel was suffering from Hypothermia, Acute Kidney Injury, Altered Mental Status, and Systematic Inflammatory Response Syndrome ("SIRS"), which is an exaggerated defense response of the body to a noxious stressor such as infection or acute inflammation.

52.     Decedent was admitted to the ICU for multi-system failure and was placed on a Bair Hugger Temperature Monitoring System to treat his Hypothermia.

53.     It was also determined that the Decedent had Septic Shock due to Gram Negative Bacterium.

54.    On December 20, 2021, Dr. Khanal from UMPC's ICU contacted Defendant Dauphin County and/or PrimeCare to enquire about the rash on the Decedent's body, which had been photographed by the Hospital and showed extreme scaling of his skin.

55.    Despite the fact that Mr. Crummel had submitted a sick call request regarding his rash in November of 2021, Defendant Medical Provider Nicole Gallup informed Dr. Khanal that the Decedent had been incontinent and smelled of urine, but that the Defendants were unaware of any rash.

56.    On December 21, 2021, a biopsy was performed on Mr. Crummel's rash, which determined that the rash was SJS/TEN.

57.    Steven Johnson Syndrome/Toxic Epidermal Necrolysis (SJS/TEN) is a potentially fatal condition where the skin begins to blister and peel, forming very painful raw areas called erosions that resemble a severe hot-water burn. The condition damages the mucous membranes, including the lining of the mouth and the airways which impacts breathing and swallowing. The painful blistering also affects the urinary tract and genitals. The condition is fatal in up to 50% of those who suffer from Steven Johnson Syndrome and Toxic Epidermal Necrolysis, which the Decedent had.

58.     Mr. Crummel's skin condition was so severe that the Hospital wanted to transfer him to a burn unit at Mercy Hospital in Pittsburgh, however the Defendants would not permit him to be transferred to the burn unit.

59.     Defendant Ritchie's and/or Defendant Medical Providers Lauri Case's, PMHNP-BC and/or Sultzbach's and/or Katie McGinn's and/or Jessica Nye's and/or Autumn Brennan's, EMT and/or Isaac Mohr's and/or Garrett Rosas', PsyD. and/or Shade Crawford's, PA and/or Melissa Lehman's, RN and/or Tia Drabich's and/or Addonna Thomas', LPN and/or Jocelyn Grube's, LPN and/or Kayla Zeiders-Heichel's, LPN and/or Mallory Stokes' and/or LPN and/or Michelle Myers' and/or Nicole Gallup's and/or Carla Rotherman's and/or Enos Martin's, MD and/or Diane Wolfe's, RN-HAS and/or Tykeisha Metz's, MA and/or Johanna Reidel's, MA and/or Stephanie Dietz's, RN and/or Robert Nichols' and/or PsyD. and/or Kathryn Sciotti's, CMA and/or Mildred Montalvo's, MA and/or Claudia Jurado's and/or Diana Cornejo's and/or Mark Haney's and/or Leslie Irons' and/or LPN and/or Shayne Goodman's and/or Kennedy Corliss' and/or Sharon Christie's and/or SEC/MA and/or Belinda Calhoun's, LPN and/or Anna Bordner's, LPN and/or Ryan Schmuck's, RN and/or Eugenia Franklin's, LPN and/or Tashawana Gordon's, MA and/or John/Jane Does # 1's failure to diagnosis and treat Mr. Crummel's skin rash resulted in him developing SJS/TEN and caused him to suffer extreme pain, which constituted deliberate indifference to a serious medical condition/need.

60.    Mr. Crummel's pain was so severe that the medical providers at the Hospital were unable to get it under control for several weeks.

61.    The Decedent spent 36 days in the Hospital and was released back to DCP on January 24, 2022 at 1:23 pm.

62.    Upon Mr. Crummel's return to DCP in January, the average temperature was below freezing, or 25 degrees colder than it had been in December when the Decedent developed Hypothermia.

63.    Notwithstanding the frigid temperatures, Mr. Crummel's cell still did not have heat.

64.    After his death, the D.A. for Dauphin County admitted to reporters that the area in the prison where the Decedent was housed was much colder than other parts of the prison.

65.    Despite the fact that the Decedent had developed Hypothermia in December, when the temperatures were much warmer, and despite the fact that the Decedent was recovering from a near fatal disease/illness, and despite the fact that the Decedent was still suffering severe mental issue and was unable to advocate for himself, upon Mr. Crummel's return to DCP on January 24, 2022, Defendants placed him in the same cell/cold part of the prison that he had been in before he was Hospitalized for 36 days, and failed to provide him additional warm clothing or

additional blankets, but instead required him to remain in his freezing cell in just a tee shirt and thin prison pants.

66.    Upon Mr. Crummel's return to DCP in January, the Decedent began exhibiting many of the symptoms that he exhibited prior to being hospitalized for Hypothermia, including lethargy, failure to eat, slow speech and the inability to communicate with Defendants.

67.    Despite the fact that Mr. Crummel was exhibiting many of the symptoms associated with Hypothermia, Defendants Defendant Medical Provider Lauri Case, PMHNP-BC and/or Sultzbach and/or Katie McGinn and/or Jessica Nye and/or Autumn Brennan, EMT and/or Isaac Mohr and/or Garrett Rosas, PsyD. and/or Shade Crawford, PA and/or Melissa Lehman, RN and/or Tia Drabich and/or Addonna Thomas, LPN and/or Jocelyn Grube, LPN and/or Kayla Zeiders-Heichel, LPN and/or Mallory Stokes and/or LPN and/or Michelle Myers and/or Nicole Gallup and/or Carla Rotherman and/or Enos Martin, MD and/or Diane Wolfe, RN-HAS and/or Tykeisha Metz, MA and/or Johanna Reidel, MA and/or Stephanie Dietz, RN and/or Robert Nichols and/or PsyD. and/or Kathryn Sciotti, CMA and/or Mildred Montalvo, MA and/or Claudia Jurado and/or Diana Cornejo and/or Mark Haney and/or Leslie Irons and/or LPN and/or Shayne Goodman and/or Kennedy Corliss and/or Sharon Christie and/or SEC/MA and/or Belinda Calhoun, LPN and/or Marielle Ritchie and/or Anna Bordner, LPN and/or Ryan Schmuck, RN and/or Eugenia Franklin, LPN and/or

Tashawana Gordon, MA and/or John/Jane Does # 1, failed to monitor his vitals, or move him to a warmer part of the prison, and were deliberately indifferent to his serious medical needs and his right to humane conditions of confinement.

68.    On the morning of January 31, 2022, Defendant Medical Provider observed that Mr. Crummel's eyes were open, fixed, and dilated, he appeared to have wet himself and his skin was cold to the touch.

69.    Defendants immediately called 911, but all efforts to revive Mr. Crummel were futile, and he died.

70.    The coroner determined that the cause of death was Hypothermia.

71.    Defendants Dauphin County and Warden Gregory Briggs were responsible for ensuring that inmates were provided safe and humane conditions of confinement, including ensuring that DCP was adequately heated in the winter months.

72.    Defendants Dauphin County and Warden Gregory Briggs were deliberately indifferent to the Decedent's health and safety and created inhumane conditions of confinement when they failed to ensure that the Decedent's cell had adequate heat, and they failed to ensure that the Decedent had adequate clothing and blankets to ward of the cold during the winter months.

73.    Defendants Dauphin County and Warden Gregory Briggs knew that the Decedent had been Hospitalized for 36 days for Hypothermia and near fatal

diseases/illness and  were deliberately indifferent to the Decedent's health and safety, and created inhumane conditions of confinement when, upon the Decedent's return to DCP in January of 2022 after suffering from Hypothermia and other near fatal diseases/illnesses, they did not require that the Decedent be placed in a warmer part of the prison that had heat, or that the Decedent be provided warmer clothes and more blankets but instead allowed him to be placed in the same cold cell or area of the prison with the bare minimum of clothes and blankets to ward off the cold.

74.    Defendants Dauphin County and Warden Gregory Briggs knew that the Decedent had been allowed to remain for days in his cell, covered in feces and urine and in wet conditions caused by the flooding of the cell, and that these conditions contributed to his Hypothermia and exacerbated and accelerated his declining physical and mental condition, and were deliberately indifferent to the Decedent's health and safety, and created inhumane conditions of confinement when they failed to address and alleviate the conditions in which the Decedent was being housed.

75.    Defendants Dauphin County and Warden Gregory Briggs had an unconstitutional custom, practice and policy of acquiescing in unconstitutional, inhumane conditions of confinement, including a lack of adequate heat/clothing/blankets in DHP during the winter months, and permitting inmates to remain for days in cells covered in water, feces, urine and food.

76.     Defendants Dauphin County and Warden Gregory Briggs had an unconstitutional custom, practice and policy of not providing adequate heat or adequate clothing during the winter months that was the direct and/or proximate cause of the Decedent dying of Hypothermia and resulted in inhumane conditions of confinement.

77.     Defendants PrimeCare Medical, Inc., CEO Thomas Weber, Esquire, COO Todd Haskins, and Corporate Medical Director John Doe had unconstitutional customs, practices and policies regarding the training of Health Care Providers hired by PrimeCare Medical, Inc. to provide health care to the prisoners at DCP, which included failure to adequately train the health care providers regarding the need to examine and diagnosis inmates with medical conditions, to treat inmates with serious medical conditions, to ensure that the inmates are housed in sanitary conditions, to ensure that the inmates are prescribed and receive needed medications, to monitor inmates who are suffering from serious mental and physical medical conditions, and to not attempt to cover up their deliberate indifference by downplaying an inmates serious medical condition in the medical documents or by lying regarding an inmates serious medical condition to other health care providers.

78.     Defendants PrimeCare Medical, Inc., CEO Thomas Weber, Esquire, COO Todd Haskins, and Corporate Medical Director John Doe had unconstitutional customs, practices and policies regarding the need adequately to examine and

diagnosis inmates with medical conditions, to treat inmates with serious medical conditions, to ensure that the inmates are housed in sanitary conditions, to ensure that the inmates are prescribed and receive needed medications, to monitor inmates who are suffering from serious mental and physical medical conditions, and to not attempt to cover up their deliberate indifference by downplaying an inmates serious medical condition in the medical documents or by lying regarding an inmates serious medical condition to other health care providers.

79.     The need for Defendants PrimeCare Medical, Inc., CEO Thomas Weber, Esquire, COO Todd Haskins, and Corporate Medical Director John Doe to have more adequate training and customs, practices and policies regarding the need adequately to examine and diagnosis inmates with medical conditions, to treat inmates with serious medical conditions, to ensure that the inmates are housed in sanitary conditions, to ensure that the inmates are prescribed and receive needed medications, to monitor inmates who are suffering from serious mental and physical medical conditions, and to not attempt to cover up their deliberate indifference by downplaying an inmates serious medical condition in the medical documents or by lying regarding an inmates serious medical condition to other health care providers is obvious and would be obvious to a lay person.

80.     Defendants PrimeCare Medical, Inc., CEO Thomas Weber, Esquire, COO Todd Haskins, and Corporate Medical Director John Doe had unconstitutional

customs, practices and policies were the direct and proximate cause of the Decedent's prolonged suffering and death.

81.     Defendants Medical Provider Lauri Case, PMHNP-BC and/or Sultzbach and/or Katie McGinn and/or Jessica Nye and/or Autumn Brennan, EMT and/or Isaac Mohr and/or Garrett Rosas, PsyD. and/or Shade Crawford, PA and/or Melissa Lehman, RN and/or Tia Drabich and/or Addonna Thomas, LPN and/or Jocelyn Grube, LPN and/or Kayla Zeiders-Heichel, LPN and/or Mallory Stokes and/or LPN and/or Michelle Myers and/or Nicole Gallup and/or Carla Rotherman and/or Enos Martin, MD and/or Diane Wolfe, RN-HAS and/or Tykeisha Metz, MA and/or Johanna Reidel, MA and/or Stephanie Dietz, RN and/or Robert Nichols and/or PsyD. and/or Kathryn Sciotti, CMA and/or Mildred Montalvo, MA and/or Claudia Jurado and/or Diana Cornejo and/or Mark Haney and/or Leslie Irons and/or LPN and/or Shayne Goodman and/or Kennedy Corliss and/or Sharon Christie and/or SEC/MA and/or Belinda Calhoun, LPN and/or Marielle Ritchie and/or Anna Bordner, LPN and/or Ryan Schmuck, RN and/or Eugenia Franklin, LPN and/or Tashawana Gordon, MA and/or John/Jane Does # 1 were deliberately indifferent to the Decedent's serious medical needs by, among other things:

- Failing to examine, diagnosis and treat the Decedent's rash.
- Failing to diagnose and treat the Decedent's Schizophrenia and serious mental health issues.
- By allowing the Decedent to remain in his cell when it was unsanitary and covered in feces, urine, vomit, food and water.
- By failing to diagnosis and treat Decedent's Hypothermia.

- By failing to examine the Decedent before prescribing medication or by denying the Decedent needed medication without examining or diagnosing him.
- By failing to monitor the Decedent when he returned to DCP from the Hospital in January and by failing to address the conditions that caused Hypothermia when he returned to DCP in January.
- By downplaying the Decedent's serious medical condition on medical documents.
- By lying regarding the Decedents serious medical condition to other medical providers.

82.    The above deliberate indifference of Defendants Medical Provider Lauri Case, PMHNP-BC and/or Sultzbach and/or Katie McGinn and/or Jessica Nye and/or Autumn Brennan, EMT and/or Isaac Mohr and/or Garrett Rosas, PsyD. and/or Shade Crawford, PA and/or Melissa Lehman, RN and/or Tia Drabich and/or Addonna Thomas, LPN and/or Jocelyn Grube, LPN and/or Kayla Zeiders-Heichel, LPN and/or Mallory Stokes and/or LPN and/or Michelle Myers and/or Nicole Gallup and/or Carla Rotherman and/or Enos Martin, MD and/or Diane Wolfe, RN-HAS and/or Tykeisha Metz, MA and/or Johanna Reidel, MA and/or Stephanie Dietz, RN and/or Robert Nichols and/or PsyD. and/or Kathryn Sciotti, CMA and/or Mildred Montalvo, MA and/or Claudia Jurado and/or Diana Cornejo and/or Mark Haney and/or Leslie Irons and/or LPN and/or Shayne Goodman and/or Kennedy Corliss and/or Sharon Christie and/or SEC/MA and/or Belinda Calhoun, LPN and/or Marielle Ritchie and/or Anna Bordner, LPN and/or Ryan Schmuck, RN and/or Eugenia Franklin, LPN and/or

Tashawana Gordon, MA and/or John/Jane Does # 1 was the proximate cause of

Decedents suffering, pain and death.

## COUNT I - 42 U.S.C. § 1983
## DUE PROCESS-- INADEQUATE MEDICAL CARE
## PLAINTIFF v. ALL INDIVIDUAL HEALTH CARE PROVIDERS,
## PRIMECARE MEDICAL, INC., CEO WEBER, COO HASKINS,
## CORPORATE MEDICAL CARE DIRECTOR JOHN DOE

83.     All of the preceding paragraphs are incorporated by reference as if more

fully set-forth herein.

84.     The Decedent had a serious medical condition that included, but was not

limited to Schizophrenia and serious mental health issues, SJS/TEN and

Hypothermia.

85.     Defendants PrimeCare Medical, Inc., CEO Weber, COO Haskins,

Corporate Medical Care Director John Doe and Medical Providers Lauri Case,

PMHNP-BC and/or Sultzbach and/or Katie McGinn and/or Jessica Nye and/or

Autumn Brennan, EMT and/or Isaac Mohr and/or Garrett Rosas, PsyD. and/or Shade

Crawford, PA and/or Melissa Lehman, RN and/or Tia Drabich and/or Addonna

Thomas, LPN and/or Jocelyn Grube, LPN and/or Kayla Zeiders-Heichel, LPN and/or

Mallory Stokes and/or LPN and/or Michelle Myers and/or Nicole Gallup and/or Carla

Rotherman and/or Enos Martin, MD and/or Diane Wolfe, RN-HAS and/or Tykeisha

Metz, MA and/or Johanna Reidel, MA and/or Stephanie Dietz, RN and/or Robert

Nichols and/or PsyD. and/or Kathryn Sciotti, CMA and/or Mildred Montalvo, MA

and/or Claudia Jurado and/or Diana Cornejo and/or Mark Haney and/or Leslie Irons

and/or LPN and/or Shayne Goodman and/or Kennedy Corliss and/or Sharon Christie

and/or SEC/MA and/or Belinda Calhoun, LPN and/or Marielle Ritchie and/or Anna

Bordner, LPN and/or Ryan Schmuck, RN and/or Eugenia Franklin, LPN and/or

Tashawana Gordon, MA and/or John/Jane Does # 1 knew that Decedent had serious

medical conditions and needs and were deliberately indifferent to those needs by

ignoring those medical conditions and/or failing examine, diagnosis and treat the

Decedent for his serious medical conditions.

86.     As a direct and proximate result of the malicious, intentional, deliberate,

and/or reckless actions of aforementioned Defendants, the Decedent suffered in

excruciating pain and died.

87.     The above-described actions of the aforementioned Defendants were so

malicious, intentional and reckless and displayed such a reckless indifference to the

Decedent's rights and well-being, that the imposition of punitive damages is

warranted.

**WHEREFORE**, pursuant to 42 U.S.C. §1983, Plaintiff demands

compensatory and punitive damages against the Defendants PrimeCare Medical,

Inc., CEO Weber, COO Haskins, Corporate Medical Care Director John Doe and

Medical Providers Lauri Case, PMHNP-BC and/or Sultzbach and/or Katie McGinn and/or Jessica Nye and/or Autumn Brennan, EMT and/or Isaac Mohr and/or Garrett Rosas, PsyD. and/or Shade Crawford, PA and/or Melissa Lehman, RN and/or Tia Drabich and/or Addonna Thomas, LPN and/or Jocelyn Grube, LPN and/or Kayla Zeiders-Heichel, LPN and/or Mallory Stokes and/or LPN and/or Michelle Myers and/or Nicole Gallup and/or Carla Rotherman and/or Enos Martin, MD and/or Diane Wolfe, RN-HAS and/or Tykeisha Metz, MA and/or Johanna Reidel, MA and/or Stephanie Dietz, RN and/or Robert Nichols and/or PsyD. and/or Kathryn Sciotti, CMA and/or Mildred Montalvo, MA and/or Claudia Jurado and/or Diana Cornejo and/or Mark Haney and/or Leslie Irons and/or LPN and/or Shayne Goodman and/or Kennedy Corliss and/or Sharon Christie and/or SEC/MA and/or Belinda Calhoun, LPN and/or Marielle Ritchie and/or Anna Bordner, LPN and/or Ryan Schmuck, RN and/or Eugenia Franklin, LPN and/or Tashawana Gordon, MA and/or John/Jane Does # 1  in an amount sufficient to fully and adequately compensate the Plaintiff and punish and deter the defendants, plus interest, costs, attorney's fees and all other appropriate relief.

## COUNT II – 42 U.S.C. § 1983
## DUE PROCESS—INHUMAN CONDITIONS OF CONFINEMENT
## PLAINTIFF v. ALL DEFENDANTS

88.    All of the preceding paragraphs are incorporated by reference as if more fully set-forth herein.

89.     All Defendants knew that DCP was not adequately heated, it was winter, and the outside temperature was extremely cold and that the inmate at DCP were only dressed in a tee shirt and thin prison pants and had only one blanket.

90.     All Defendants knew that the Decedent had been required to remain in his cell for extended periods of time and that his cell was covered in water, feces, vomit, urine and food and was unsanitary.

91.     After Decedent had returned to DCP from the Hospital in January of 2022, all Defendants knew that developed Hypothermia in the prison in December of 2021, when the temperatures were much warmer, yet the Decedent was returned to the same cold, heatless cell in the cold part of the prison, with only a tee shirt, thin prison pants and one blanket.

92.     The condition of Decedent's cell was inhumane and constituted an inhumane condition of confinement.

93.     All Defendants were deliberately indifferent to the inhuman conditions of confinement the Decedent was required to endure while housed at DCP.

94.     As the direct and proximate result of all Defendants deliberate indifference to the inhumane conditions of confinement the Decedent was suffered in psychological and physical pain and died.

95.     The above-described actions of the aforementioned Defendants were so malicious, intentional and reckless and displayed such a reckless indifference to the

Decedent's rights and well-being, that the imposition of punitive damages is warranted.

WHEREFORE, pursuant to 42 U.S.C. §1983 and §1988, Plaintiff demands compensatory and punitive damages against all Defendants in an amount sufficient to fully and adequately compensate the Plaintiff and punish and deter the defendants, plus interest, costs, attorney's fees and all other appropriate relief.

**COUNT III – 42 U.S.C. § 1983**
**ADA CLAIM**
**PLAINTIFF v. DAUPHIN COUNTY**

96.    All of the preceding paragraphs are incorporated by reference as if more fully set-forth herein.

97.    Decedent was qualified individual with a disability, namely Schizophrenia and other mental health issues, who was discriminated against by Defendant Dauphin County as a result of is disability.

98.    Specifically, Defendant failed to provide the Decedent the medical care that his Schizophrenia and other mental health issues required, and instead allowed the Decedent to decompensate and suffer a severe mental breakdown that included smearing his cell walls with feces, urinating and flooding his cell with water, and then requiring him to stay in the cell in this condition.

99.    Defendant discriminated against the Decedent by failing to accommodate his disability by providing adequate medical care for his condition, including but not limited to psychiatric care.

100.    The above-described actions of the Defendant was so malicious, intentional and reckless and displayed such a reckless indifference to the Decedent's rights and well-being, that the imposition of punitive damages is warranted.

**WHEREFORE**, pursuant to the ADA, Plaintiff demands compensatory and punitive damages against the Defendant in an amount sufficient to fully and adequately compensate the Plaintiff and punish and deter the defendants, plus interest, costs, attorney's fees and all other appropriate relief.

### COUNT IV- 42 U.S.C. § 1983
### *Monell* Claim
### PLAINTIFF v. DAUPHIN COUNTY, PRIMECARE MEDICAL, INC., WARDEN BRIGGS, CEO WEBBER AND COO HASKINS

101.    All of the preceding paragraphs are incorporated by reference as if more fully set-forth herein.

102.    Defendants Dauphin County, PrimeCare Medical, Inc., Warden Briggs, CEO Webber and COO Haskins have adopted and maintained for many years a recognized and accepted policy, custom, and practice of condoning and/or the acquiescence of the deliberate indifference to serious medical needs of citizens, arrestees, detainees and inmates, including the Decedent, and of subjecting them to

the same type of treatment to which Decedent was subjected, which policy violates the Due Process Clause of the Fourteenth Amendment of the Constitution of the United States.

103.   The aforementioned unconstitutional policy, custom and practice includes failing to provide adequate policies and procedures regarding the need for medical providers to examine, diagnose and treat inmates/pretrial detainees with serious medical needs, including the Decedent, and failing to provide human conditions of confinement, which includes, but is not limited to, failing to provide adequate heat in DCP during the winter months, and allowing mentally ill inmates/pretrial detainees to remains in cell covered in feces and urine and water from flooding of the cell.

104.   The aforementioned unconstitutional policy, custom and practice includes failing to provide adequate training of medical providers regarding the need to examine, diagnosis and treat inmates/pretrial detainees with serious mental and physical medical conditions, including the Decedent, and failing to train medical providers on the need to ensure that the conditions in which the inmate is housed are sanitary and humane.

105.   Defendants Dauphin County, PrimeCare Medical, Inc., Warden Briggs, CEO Webber and COO Haskins for more adequate policies and procedures regarding the requirement to examine, diagnose and treat inmates/pretrial detainees with serious mental and physical medical conditions and to ensure sanitary and humane conditions of confinement is obvious, and the failure of the aforementioned Defendants to provide

constitutes deliberate indifference in violation of the Decedents right to a safe and human conditions of confinement under the Due Process Clause of the Fourteenth Amendment.

106.   As the direct and proximate cause of Defendants Dauphin County, PrimeCare Medical, Inc., Warden Briggs, CEO Webber and COO Haskins the Decedents right under the Due Process Clause were violated and he suffered prolong pain and agony and died.

**WHEREFORE**, pursuant to 42 U.S.C. § 1983 and § 1988, Plaintiff demands compensatory damages against Defendants Dauphin County, PrimeCare Medical, Inc., Warden Briggs, CEO Webber and COO Haskins jointly and/or severally, in an amount sufficient to fully and adequately compensate the Plaintiff, plus interest, costs, attorney's fees and all other appropriate relief.

## <u>COUNT V – CORPORATE NEGLIGENCE/GROSS NEGLIGENCE<br>PLAINTIFF v. PRIMECARE MEDICAL, INC.</u>

107.   All of the preceding paragraphs are incorporated by reference as if more fully set-forth herein.

108.   The direct corporate negligence, gross negligence and carelessness of Defendant PrimeCare Medical, Inc. includes, but is not limited to:

    a.   Failure to properly train its employees, agents, and ostensible agents regarding the need to ensure that inmates with serious mental and physical medical conditions are examined, diagnosed and treated.

      b.    Failure to properly train its employees, agents, and ostensible agents regarding the need for sanitary and humane conditions in the cells;

      c.    Failure to formulate, adopt, and/or enforce adequate rules, policies and/or procedures to ensure that inmates with severe mental health issues receive needed medicines and psychological services such as counseling, therapy and psychiatric assessments:

      d.    Failure to establish policies to ensure that inmates with severe mental and physical health issues that are being are monitored or seen as recommended and on a regular basis

109.   Defendant PrimeCare Medical, Inc., had actual and/or constructive knowledge of the above acts and omissions which caused harm, increased the risk of harm, and were substantial factors in causing the injuries and wrongful death of the Decedent.

110.   The direct corporate and/or gross negligence and carelessness of Defendant PrimeCare Medical, Inc. set forth herein caused harm, increased the harm, and was a substantial factor in causing the injuries and wrongful death of the Decedent.

**WHEREFORE**, Plaintiff, as the administrator of the Estate of Jamal Crummel, demands judgment against Defendant PrimeCare Medical, Inc. for an amount in excess of One Hundred Fifty Thousand ($150,000.00), including all damages available pursuant to 42 U.S.C. §1983 and §1988, including compensatory

and punitive damages against Defendant PrimeCare Medical, Inc., plus interest, costs,

attorney's fees, and all other appropriate relief.

## COUNT VI – NEGLIGENCE/VICARIOUS LIABILITY
## PLAINTIFF v. ALL MEDICAL CARE PROVIDERS

111.    All of the preceding paragraphs are incorporated by reference as if more

fully set-forth herein.

112.    Defendants Medical Providers Lauri Case, PMHNP-BC and/or

Sultzbach and/or Katie McGinn and/or Jessica Nye and/or Autumn Brennan, EMT

and/or Isaac Mohr and/or Garrett Rosas, PsyD. and/or Shade Crawford, PA and/or

Melissa Lehman, RN and/or Tia Drabich and/or Addonna Thomas, LPN and/or

Jocelyn Grube, LPN and/or Kayla Zeiders-Heichel, LPN and/or Mallory Stokes

and/or LPN and/or Michelle Myers and/or Nicole Gallup and/or Carla Rotherman

and/or Enos Martin, MD and/or Diane Wolfe, RN-HAS and/or Tykeisha Metz,

MA and/or Johanna Reidel, MA and/or Stephanie Dietz, RN and/or Robert Nichols

and/or PsyD. and/or Kathryn Sciotti, CMA and/or Mildred Montalvo, MA and/or

Claudia Jurado and/or Diana Cornejo and/or Mark Haney and/or Leslie Irons

and/or LPN and/or Shayne Goodman and/or Kennedy Corliss and/or Sharon

Christie and/or SEC/MA and/or Belinda Calhoun, LPN and/or Marielle Ritchie

and/or Anna Bordner, LPN and/or Ryan Schmuck, RN and/or Eugenia Franklin,

LPN and/or Tashawana Gordon, MA and/or John/Jane Does # 1, had a duty to

render reasonable, proper, adequate and appropriate medical care to Plaintiff's Decedent and to protect him from harm.

113.   As detailed above, the aforementioned Defendants were negligent and careless, and breached their duty of care the Plaintiff's Decedent, and said negligence and carelessness was a substantial factor causing the injuries and wrongful death of the Decedent.

114.   Defendant PrimeCare Medical, Inc. is liable for the negligent conduct of the aforementioned Defendants pursuant to the principles of agency, ostensible agency, vicarious liability and/or respondeat superior.

**WHEREFORE**, Plaintiff, as the administrator of the Estate of Jamal Crummel, demands judgment against Defendants Medical Providers Lauri Case, PMHNP-BC and/or Sultzbach and/or Katie McGinn and/or Jessica Nye and/or Autumn Brennan, EMT and/or Isaac Mohr and/or Garrett Rosas, PsyD. and/or Shade Crawford, PA and/or Melissa Lehman, RN and/or Tia Drabich and/or Addonna Thomas, LPN and/or Jocelyn Grube, LPN and/or Kayla Zeiders-Heichel, LPN and/or Mallory Stokes and/or LPN and/or Michelle Myers and/or Nicole Gallup and/or Carla Rotherman and/or Enos Martin, MD and/or Diane Wolfe, RN-HAS and/or Tykeisha Metz, MA and/or Johanna Reidel, MA and/or Stephanie Dietz, RN and/or Robert Nichols and/or PsyD. and/or Kathryn Sciotti, CMA and/or Mildred Montalvo, MA and/or Claudia Jurado and/or Diana Cornejo and/or Mark Haney

and/or Leslie Irons and/or LPN and/or Shayne Goodman and/or Kennedy Corliss and/or Sharon Christie and/or SEC/MA and/or Belinda Calhoun, LPN and/or Marielle Ritchie and/or Anna Bordner, LPN and/or Ryan Schmuck, RN and/or Eugenia Franklin, LPN and/or Tashawana Gordon, MA and/or John/Jane Does # 1, jointly and severally, for an amount in excess of One Hundred Fifty Thousand ($150,000.00), including all damages available pursuant to 42 U.S.C. §1983 and §1988, including compensatory and punitive damages against Defendant PrimeCare Medical, Inc., plus interest, costs, attorney's fees, and all other appropriate relief.

## COUNT VII – WRONGFUL DEATH
## PLAINTIFF v. ALL DEFENDANTS

115.    All of the preceding paragraphs are incorporated by reference as if more fully set-forth herein.

116.    Plaintiff brings this action pursuant to the Wrongful Death Act 42 Pa. C.S.A. Section 8301 and claims all damages recoverable under the Pennsylvania Wrongful Death Act.

117.    As a direct and proximate result of the aforementioned actions of the Defendants, the Decedent, Jamal Crummel, his family and his estate have suffered severe emotional and pecuniary losses and damages including the following:

(a)    an amount which will cover all funeral, burial and estate administration expenses incurred;

(b)     an amount which will fairly and adequately compensate the family members of the decedent for their loss of such contributions as they would have received between the time of the death of the decedent and today. This includes all monies that the decedent would have spent for or given to his family;

(c)     an amount which will fairly and adequately compensate his family for the loss of such contributions as the decedent would have contributed to the support of his family between today and the end of his normal life expectancy; and

(d)     an amount which will fairly and adequately compensate his family for the pecuniary and emotional value of the services, society and comfort that he would have given to his family had he lived including such elements as provision of physical comfort and services and provision of society and comfort.

118.   As a direct and proximate result of the Defendants' wrongdoing as set forth above, which is incorporated herein, Jamal Crummel's Wrongful Death beneficiaries suffered, are suffering, and will, for an indefinite period of time in the future, suffer damages, injuries and losses including but not limited to, a loss of financial support, and the beneficiaries have been wrongfully deprived of the contributions they would have received from him, including monies which he would have provided for items such as clothing, food, shelter, medical care, education and entertainment, recreation and gifts.

119.   As a direct and proximate result of Defendants' wrongdoing as set forth above, which is incorporated herein, Jamal Crummel's Wrongful Death beneficiaries have been caused to incur and pay various expenses for medical treatment, hospital care, custodial care, nursing care and medications, and funeral and other expenses related to his death.

**WHEREFORE**, pursuant to 42 U.S.C. § 1983 and Pennsylvania Negligence Law, Plaintiff, as the administrator of the Estate of Jamal Crummel, demands compensatory and punitive damages against all Defendants, jointly and/or severally, in an amount sufficient to fully and adequately compensate the Plaintiff, plus interest, costs, attorney's fees and all other appropriate relief.

## <u>COUNT VII – SURVIVAL ACTION</u>
## <u>PLAINTIFF v. ALL DEFENDANTS</u>

120.   All of the preceding paragraphs are incorporated by reference as if more fully set-forth herein.

121.   Plaintiff brings this action on behalf of the Estate of Jamal Crummel, deceased, by virtue of the Survival Act, 42 Pa.C.S.A. § 8302, and claims all benefits of the Survival Act on behalf of the Estate of Jamal Crummel and other persons entitled to recover under law.

122.   As a direct and proximate result of the aforementioned actions of the defendants, the decedent, Jamal Crummel, his family and his estate are entitled to damages which shall include the following:

(a)   an award of the total net amount that the decedent would have earned between the date of his death and today;

(b)   an award of the net amount that the decedent would have earned between today and the natural end of the decedent's life expectancy; and

(c)   an award of such an amount as will fairly and adequately compensate the estate for the mental and physical pain and suffering that the decedent endured from the moment of the improper treatment by the defendants to the moment of his death as a foreseeable result of the improper treatment.

123.   As a direct and proximate result of Defendants' wrongdoing as set forth above, which is incorporated herein, Plaintiff claims on behalf of the Estate of Jamal Crummel, all damages suffered by the Estate by reason of the death of Jamal Crummel, including without limit the generality of the following: the severe injuries to Jamal Crummel, which resulted in his death; the anxiety, horror, fear of impending death, mental disturbance, pain, suffering and other intangible losses which Jamal Crummel suffered prior to his death; the loss of past, present and future earning capacity suffered by Jamal Crummel, from the date of his death until the time in the future he would have lived had he not died as a result of the injuries he sustained;

expenses for medical care; the loss and total limitation and deprivation of his normal activities, enjoyment of life, pursuits and life's pleasures from the date of his death until such time in the future as he would have lived had he not died as a result of the injuries sustained.

**WHEREFORE**, pursuant to 42 U.S.C. § 1983 and Pennsylvania Law, the Plaintiff, as administrator for the Estate of Jamal Crummel, demands compensatory and punitive damages against defendants, jointly and/or severally, in an amount sufficient to fully and adequately compensate the Plaintiff, plus interest, costs, attorney's fees and all other appropriate relief.

Respectfully submitted,
/s/ Leticia C. Chavez-Freed
LETICIA C. CHAVEZ-FREED, ESQUIRE
Pennsylvania ID No. 323615
THE CHAVEZ-FREED LAW OFFICE
2600 North Third Street | Second Floor
Harrisburg, PA 17110
(717) 893-5698
leticia@chavez-freedlaw.com

/s/ Alan Denenberg
ALAN DENENBERG, ESQUIRE
Pennsylvania ID No. 54161
ABRAMSON & DENENBERG, P.C.
1315 Walnut Street | Suite 500
Philadelphia, PA 19107
(215) 398-7066
adenenberg@adlawfirm.com