## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

_____

| | | |
|---|---|---|
| **JIMMY LEE CRAWFORD, AS** | : | |
| **ADMINISTRATOR OF THE ESTATE** | : | |
| **OF JAMAL CRUMMEL, DECEASED** | : | **CIVIL ACTION NO.** |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **DAUPHIN COUNTY** | : | **JURY TRIAL DEMANDED** |
| **and** | : | |
| **PRIMECARE MEDICAL, INC.** | : | |
| **and** | : | |
| **WARDEN GREGORY BRIGGS** | : | *Electronically Filed* |
| **and** | : | |
| **CEO THOMAS WEBBER, ESQUIRE** | : | |
| **and** | : | |
| **COO TODD HASKINS** | : | |
| **and** | : | |
| **CORPORATE MEDICAL DIRECTOR,** | : | |
| **JOHN DOE** | : | |
| **and** | : | |
| | : | |
| **MEDICAL PROVIDERS KATIE MCGINN** | : | |
| **JESSICA NYE, AUTUMN BRENNAN,** | : | |
| **CHEREE SULTZBACH,: LAURA CASE,** | : | |
| **PMHNP-BC, GARRETT ROSAS, PsyD,** | : | |
| **SHADE CRAWFORD, PA, TIA DRABICH** | : | |
| **ADDONNA THOMAS, LPN,** | : | |
| **KAYLA ZEIDERS-HEICHEL, LPN,** | : | |
| **MALLORY STOKES, NICOLE MAGWOOD,** | : | |
| **LPN, ADRIENNE FREEMAN, NP, NICOLE** | : | |
| **SUSAN DELOE, LPN, ,GALLUP,** | : | |
| **CARLA ROTHERMAN, ENOS MARTIN, MD,** | : | |
| **DIANE WOLFE, RN-HSA, TYKEISHA** | : | |
| **METZ, MA, JOHANNA REIDEL, MA,** | : | |
| **ROBERT NICHOLS, PSY.D., KATHRYN** | : | |
| **SCIOTTI, CMA, MILDRED MONTALVO, MA,:** | | |
| **LESLIE IRONS, LPN,MARIELLE RITCHIE,** | : | |
| **TASHAWANA GORDON, MA,** | : | |
| **JOHN/JANE DOES # 1-10** | : | |
| **Defendants** | : | |

_____

**PLAINTIFF'S SECOND AMENDED COMPLAINT**

**I.    PRELIMINARY STATEMENT**

On January 31, 2022, Decedent, Jamal Crummel ("Decedent" or "Mr. Crummel"), a pretrial detainee, died in Dauphin County Prison ("DCP") from hypothermia and numerous serious medical conditions that went untreated by Defendants. Plaintiff, Jimmy Lee Crawford, brings this lawsuit against Defendants on behalf of his son, Jamal Crummel, pursuant to 42 U.S.C. § 1983, alleging Due Process claims for Inadequate Medical Care and Inhuman Conditions of Confinement, as well as a claim under the Americans with Disability Act ("ADA") and numerous Pennsylvania State Law Claims. The Inadequate Medical Care and ADA claims stem from Defendant's failure to treat and accommodate Mr. Crummel's schizophrenia, decompensating mental condition, and Steven Johnson Syndrome ("SJS")/Toxic Epidermal Necrolysis ("TEN"), which is a serious, life-threatening, extremely painful skin disease that damages the skin and mucuos membranes and results in rashes, blisters and peeling skin that resembles severe hot water burns. The inhuman conditions of confinement claim stems from Mr. Crummel's incarceration in a cell, by himself, for twenty-four hours a day, that was covered in his feces, urine, and water. Mr. Crummel was required to endure these conditions suffering from a painful, potentially fatal skin disease, during the winter months of December and January, wearing a tee shirt and thin prison pants, in a

prison cell that had no heat and/or inadequate heat, resulting in his death by hypothermia.

## II.    JURISDICTION

1.    This Court has jurisdiction over the subject matter of this Complaint under 42 U.S.C § 1983 and 28 U.S.C. §§ 1331, 1343(a)(3), 1343 (a)(4) and 1367(a).

2.    Venue is proper pursuant to 28 U.S.C. § 1391(b) because the cause of action upon which the complaint is based arose in Dauphin County, Pennsylvania, which is in the Middle District of Pennsylvania.

## III.    PARTIES

3.    Plaintiff, Jimmy Lee Crawford, is an adult citizen and resident of the State of Pennsylvania and was at all relevant times the father of Jamal Crummel, and the administrator of his estate.

4.    At all relevant times, Jamal Crummel was a pretrial detainee at Dauphin County Prison, who was under the care, custody and control of Defendants.

5.    Defendant, Dauphin County, is an entity or political subdivision organized and existing under the laws of the Commonwealth of Pennsylvania, and at all relevant times owned, operated, managed, maintained, and was otherwise responsible for the pretrial detainees at DCP, including the Deceased.

6.    At all relevant times, Defendant Dauphin County acted or failed to act through its employees, agents, servants, and/or contactors, then and there acting in

the course and scope of their employment, agency, servanthood, and/or contract, including but not limited to the individually named defendants.

7.    At all relevant times, Defendant Dauphin County was charged with housing, supervising, and caring for the pretrial detainees at "DCP" and they delegated their constitutional duty of providing medical care of said pretrial detainees to Defendant PrimeCare Medical, Inc.

8.    At all relevant times, Defendant Dauphin County was charged with maintaining DPC, including ensuring that the jail cells were clean and habitable, and had sufficient heat during the winter months.

9.    Defendant, PrimeCare Medical, Inc. ("PrimeCare"), is a business entity organized and existing under the laws of the Commonwealth of Pennsylvania, with its principal place of business located in Harrisburg, PA.

10.    At all relevant times, Defendant PrimeCare acted or failed to act through its employees, agents, servants, and/or contactors, then and there acting in the course and scope of their employment, agency, servanthood, and/or contract, including but not limited to the individually named defendants.

11.    At all times, Defendants Dauphin County and PrimeCare were responsible for the testing, hiring, training, supervising, and disciplining individuals staffed at "DCP," including, but not limited to, the named individual defendants.

4

12.    At all relevant times, Defendant PrimeCare was performing a traditional governmental function, pursuant to contract, in joint participation with Defendant Dauphin Count and therefore was a state actor, acting under color of state law.

13.    Defendant Warden Gregory Briggs is an adult individual and resident of the Commonwealth of Pennsylvania, who, at all relevant times, was employed by Defendant Dauphin County, was acting under color of state law, and had final decision-making authority at "DCP" over all policies and issues relevant to the instant complaint. Warden Gregory Biggs is being sued in both his individual and official capacities.

14.    Defendants, CEO Thomas Webber, Esquire, COO Todd Haskins, and Corporate Medical Director John Doe, are adult individuals and residents of the Commonwealth of Pennsylvania, who, at all relevant times, were employed by Defendant PrimeCare and were acting under color of state law, and had final decision-making authority at PrimeCare over all policies and issues relevant to the instant complaint. Defendants, CEO Thomas Webber, Esquire, COO Todd Haskins, and Corporate Medical Director John Doe, are being sued in their individual and official capacities.

15.    Defendant Medical Providers Katie McGinn, Jessica Nye, Autumn Brennan, EMT, Cheree Sultzbach, Lauri Case, PMHNP-BC, Garrett Rosas, PsyD.,

Shade Crawford, PA, Tia Drabich, Addonna Thomas, LPN, Kayla Zeiders-Heichel, LPN, Mallory Stokes, LPN, Nicole Gallup, Carla Rotherman, Enos Martin, MD, Diane Wolfe, RN-HSA, Tykeisha Metz, MA, Johanna Reidel, MA, Stephanie Dietz, RN, Robert Nichols, PsyD., Kathryn Sciotti, CMA, Mildred Montalvo, MA, Claudia Jurado, Diana Cornejo, Mark Haney, Leslie Irons, LPN, Marielle Ritchie, Anna Bordner, LPN, Ryan Schmuck, RN, Eugenia Franklin, LPN, and Tashawana Gordon, MA, and John/Jane Does # 1-10 (so designated by fictitious names because Plaintiff, despite the exercise of reasonable diligence, was unable to learn their identities), are adult individuals and residents of the Commonwealth of Pennsylvania, who, at all relevant times, were employed as medical providers at DCP by Defendant PrimeCare and/or Dauphin County.

16.    At all relevant times, Defendant Medical Providers Katie McGinn, Jessica Nye, Autumn Brennan, EMT, Cheree Sultzbach, Lauri Case, PMHNP-BC, Garrett Rosas, PsyD., Shade Crawford, PA, Tia Drabich, Addonna Thomas, LPN, Kayla Zeiders-Heichel, LPN, Mallory Stokes, LPN, Nicole Gallup, Carla Rotherman, Enos Martin, MD, Diane Wolfe, RN-HSA, Tykeisha Metz, MA, Johanna Reidel, MA, Stephanie Dietz, RN, Robert Nichols, PsyD., Kathryn Sciotti, CMA, Mildred Montalvo, MA, Claudia Jurado, Diana Cornejo, Mark Haney, Leslie Irons, LPN, Marielle Ritchie, Anna Bordner, LPN, Ryan Schmuck, RN, Eugenia Franklin, LPN, and Tashawana Gordon, MA, and John/Jane Does # 1-10 (so

designated by fictitious names because Plaintiff, despite the exercise of reasonable diligence, was unable to learn their identities) were acting within the course and scope of their employment, under the color of state law, and pursuant to the customs, policies, and practices of Defendant Dauphin County and/or Defendant "PrimeCare". They are being sued in their individual capacities.

## IV. OPERATIVE FACTS

17.    On September 15, 2021, Mr. Crummel, a 45-year-old male, was arrested on numerous charges and committed to DCP.

18.    This was not the Decedent's first incarceration at DCP, and based on his prior incarceration at the prison, it was noted that Mr. Crummel suffered from schizophrenia, and that during his prior incarceration he had psychological/mental health issues, for which he was taking Haldol and Seroquel, as well as heart issues, including hypertension.

19.    During the intake performed during September 15, 2021 incarceration, Mildred Montalvo noted that the Decedent was experiencing signs of mental health illness.

20.    It was also noted that the Decedent had been hospitalized on at least three different occasions in psychiatric hospitals for serious mental health issues, and was taking Haldol.

21.    At the time of his incarceration, Mr. Crummel was receiving social security disability benefits for his schizophrenia and other serious mental health issues.

22.    The Decedent's schizophrenia and other serious mental health issues constituted a recognized disability under the ADA as well as constituting a serious medical condition/need.

23.    Based on his intake, Mr. Crummel was placed on Level 1 suicide watch.

24.    In addition, the intake performed during September 15, 2021, incarceration noted that at the time of his commitment, Mr. Crummel did not have any rashes.

25.    On September 22, 2021, Shade Crawford, MA and Robert Nichols, Psy.D. evaluated the Decedent, and Defendant Nichols took the Decedent off suicide watch.

26.    On September 25, 2021, Decedent tested positive for COVID-19, and because his oxygen levels were between 78% and 87%, he was taken to the Hospital (UPMC Harrisburg) for treatment.

27.    At the Hospital, the Decedent developed Pneumonia, and after three days in the Hospital, he was returned to DCP, and placed in isolation because he was still testing positive for COVID-19.

28.    On November 11, 2021, Mr. Crummel submitted a sick call request regarding a rash, tenderness and bleeding in his scrotum area.

29.    Pursuant to the sick call request, the Decedent met with Defendant Marielle Ritchie on November 12, 2021, who did not examine Mr. Crummel's scrotum area, or diagnose his condition.

30.    Indeed, Defendant Ritchie's notes from November 12, 2021 state that the affected area was "not visualized."

31.    Instead, without examining or diagnosing the Decedent, Defendant Ritchie ordered the Decedent Bacitracin.

32.    The order for Bacitracin was not approved, and the Decedent never received it, leaving the Decedent's condition to worsen.

33.    At the time the Decedent was seen by Defendant Ritchie on November 12, 2021, his rash, tenderness, and bleeding, which were left undiagnosed, were symptoms of Steven Johnson Syndrome ("SJS"), a serious medical condition that Mr. Crummel was suffering from that can be fatal, and if left untreated becomes extremely painful and causes the skin to blister and peel off.

34.    Despite the Decedent's symptoms, neither Defendant Ritchie, nor any of the other named Defendants, examined, diagnosed, or treated the Decedent's serious medical condition, namely, SJS, and were deliberately indifferent to his

serious, life-threatening medical condition and needs, leaving it to worsen and the Decedent's condition to become further perilous.

35.    On December 11/12, 2021, Mr. Crummel's mental and physical health visibly began to deteriorate; he stopped eating, and began yelling obscenities, banging on the door, drawing on the walls of his cell with his feces and urinating in his cell.

36.    Defendants Medical Providers Katie McGinn, Jessica Nye, Autumn Brennan, EMT, Cheree Sultzbach, Lauri Case, PMHNP-BC, Garrett Rosas, PsyD., Shade Crawford, PA, Tia Drabich, Addonna Thomas, LPN, Kayla Zeiders-Heichel, LPN, Mallory Stokes, LPN, Nicole Gallup, Carla Rotherman, Enos Martin, MD, Diane Wolfe, RN-HSA, Tykeisha Metz, MA, Johanna Reidel, MA, Stephanie Dietz, RN, Robert Nichols, PsyD., Kathryn Sciotti, CMA, Mildred Montalvo, MA, Claudia Jurado, Diana Cornejo, Mark Haney, Leslie Irons, LPN, Marielle Ritchie, Anna Bordner, LPN, Ryan Schmuck, RN, Eugenia Franklin, LPN, and Tashawana Gordon, MA, and John/Jane Does # 1-10 (so designated by fictitious names because Plaintiff, despite the exercise of reasonable diligence, was unable to learn their identities)knew that the Decedent suffered from schizophrenia and other serious mental health issues from his prior incarceration at DCP, and his current intake at DCP, and further knew that his conduct was related to a serious schizophrenic/bipolar episode, and despite being responsible for Mr. Crummel's treatment, with deliberate indifference ignored

his symptoms and failed provide him any treatment for his breakdown, including, but not limited to failing to refer him to a psychiatrist for a mental health evaluation or having him 302'd and sent to psychiatric hospital.

37.    On December 13, 2021, Defendant Medical Provider Cheree Sultzbach noted that the Decedent was purposefully flooding his cell with water to the point that the water was leaking out under the cell door and noted that Mr. Crummel was severely agitated and not responding to external stimuli.

38.    Despite the fact that the Decedent was visibly decompensating and suffering a major mental breakdown, neither Defendant Sultzbach nor any of the other named Defendants, who witnessed Mr. Crummel's breakdown, and who therefore were also aware that Mr. Crummel was suffering a serious mental breakdown, either through witnessing his conduct or the reading medical documentation regarding his behavior, made any attempt to treat the Decedent's serious mental health issues or accommodate his schizophrenia and other serious mental health issues by providing him the care and treatment he needed.

39.    Instead, Defendants were deliberately indifferent to Mr. Crummel's serious medical needs and allowed him to remain in a damp/wet prison cell covered in feces and urine.

40.    At the time Mr. Crummel was being housed in the damp/wet prison cell covered in feces and urine on December 13, 2021, DCP did not heat or inadequate

heated in the prison cells, and more specifically in the Decedent's prison cell, and the average temperature for the day was 38.5 degrees Fahrenheit.

41.    At the time Mr. Crummel was being housed in the damp/wet prison cell covered in feces and urine on December 13, 2021, DCP was so cold, the guards and other prison personnel were issued thermal clothing and winter parkas, which they wore while doing their jobs, while the prisoners, including the Decedent, were required to wear tee shirts and thin prison pants that resembled medical scrubs.

42.    On December 15, 2021, Mr. Crummel vomited several times during the night, and Defendant Medical providers Cheree Sultzach, LPN, Susan Deloe, LPN, and Lauri Case, PMHNP-BC reported that the Decedent's cell had a pungent smell, and there was vomit, food, urine, feces and water on the floor, and also that his physical health was rapidly declining.

43.    Upon examination, Mr. Crummel's blood pressure was 188/102, his heartrate was 56, he was cold to the touch, he had a swollen right hand, he had slurred speech, he had lethargy, his mental status was noted as "confused," his pupils were slow to react, and he was having difficulty following commands and standing.

44.    As a result of the Decedent's rapidly declining physical condition, he was taken to the Hospital, where he stayed for less than 24 hours, and it was determined that he had "low potassium".

45.    Upon being returned to DCP, the Decedent's symptoms had not resolved, and on December 17, 2021, Defendant Medical Provider Lauri Case, PMHNP-BC noted that Mr. Crummel's cell was still flooded and scattered with food debris.

46.    Despite the fact the Decedent's symptoms had not resolved, and his cell was flooded and littered with food debris, feces and urine, neither Defendant Medical nor the other Defendants, all of whom were responsible for treating the Decedent and were aware of his declining health, and also were aware of the deplorable, inhuman condition of his cell from the medical records, made any effort to treat Mr. Crummel for his declining health or made any effort to alleviate the inhuman conditions in his cell.

47.    Instead, Defendants ignored the Decedent's visibly declining health and the inhuman conditions in his cell, and were deliberately indifferent to his serious medical needs and the inhuman conditions in which Mr. Crummel was being housed.

48.    On December 19, 2021, Defendant Medical Providers Tia Drabich and Stephanie Deitz, RN., requested permission to enter the Decedent's cell to conduct a physical examination, and they discovered that Mr. Crummel had slurred speech, dry oral mucosa, macerated skin on his hands and feet, incontinence, tachycardia, was breathing abnormally and smelled of urine.

49.    Defendant Drabich noted "Multi system organ failure."

50.    The cold, unsanitary, wet conditions of the Decedent's cell, which all of the Defendants were aware of through the medical records, exacerbated and accelerated Mr. Crummel's declining physical and mental health.

51.    Defendant COO Todd Hoskins was contacted regarding the condition that the Decedent was found in on December 19, 2021, and Mr. Crummel was taken to the Hospital (UPMC Harrisburg).

52.    Upon arrival at the hospital, it was noted that the Decedent was bradycardic (had a slow heart rate) and hypotensive (abnormally low blood pressure), appeared physically ill, and had a core body temperature of 85 degrees Fahrenheit.

53.    The Decedent's mental and physical condition was so precarious that the hospital considered calling a stroke alert, but providers eventually conducted a CT scan and ruled out a brain bleed.

54.    After further examination, it was discovered that Mr. Crummel had cherry red non-blanching rash on his medial thighs, tip of his penis, buttocks and lower back region, and his skin was sloughing on is bilateral wrists and feet.

55.    Testing indicated that the Decedent had an acute kidney injury and leukopenia, abnormal blood glucose, lactic acid, c-reactive protein and creatine readings.

56.    He was also noted to have diffuse sloughing on his skin (and erythematous rash), hypothermia, acute kidney injury, altered mental status, and Systematic Inflammatory Response Syndrome ("SIRS"), which is an exaggerated defense response of the body to a noxious stressor such as infection or acute inflammation.

57.    Decedent was admitted to the ICU for multi-system organ failure and was placed on a Bear Hugger Temperature Monitoring System to treat his Hypothermia.

58.    On December , 2021, Dr. Khanal from UMPC's ICU contacted Defendant Dauphin County and/or PrimeCare to enquire about the rash on the Decedent's body, which had been photographed by the Hospital and showed extreme scaling of his skin.

59.    Despite the fact that Mr. Crummel had submitted a sick call request regarding his rash in November of 2021, Defendant Medical Provider Nicole Gallup informed Dr. Khanal that the Decedent had been incontinent and smelled of urine, but that the Defendants were unaware of any rash.

60.    On December 21, 2021, a biopsy was performed on Mr. Crummel's rash, which determined that the rash was Johnson Syndrome/Toxic Epidermal Necrolysis ("SJS/TEN").

61.     Defendant Ritchie's failure to diagnosis and treat Mr. Crummel's skin rash resulted in him developing SJS/TEN and caused him to suffer extreme pain, which constituted deliberate indifference to a serious medical condition/need.

62.     SJS/TEN is a potentially fatal condition where the skin begins to blister and peel, forming very painful raw areas called erosions that resemble a severe hot-water burn. The condition damages the mucous membranes, including the lining of the mouth and the airways which impacts breathing and swallowing. The painful blistering also affects the urinary tract and genitals. The condition is fatal in up to 50% of those who suffer from Steven Johnson Syndrome and Toxic Epidermal Necrolysis, which the Decedent had.

63.     While at the hospital, Mr. Crummel's skin condition was so severe that the Hospital recommended transferring him to a burn unit at Mercy Hospital in Pittsburgh, however the Defendants would not permit him to be transferred to the burn unit.

64.     Mr. Crummel's pain was so severe that the medical providers at the Hospital were unable to get it under control for several weeks.

65.     Mr. Crummel spent 36 days in the Hospital and was released back to DCP on January 24, 2022 at 1:23 pm.

66.    Upon Mr. Crummel's return to DCP in January, the average temperature was below freezing, or 25 degrees colder than it had been in December when the Decedent developed Hypothermia.

67.    Notwithstanding the frigid temperatures, Mr. Crummel's cell still did not have heat.

68.    Indeed, despite the fact that the Decedent had developed hypothermia in December, when the temperatures were much warmer, and despite the fact that the Decedent was recovering from a near fatal disease/illness, and despite the fact that the Decedent was still suffering severe mental issue and was unable to advocate for himself, upon Mr. Crummel's return to DCP on January 24, 2022, Defendants placed him in the same cell/cold part of the prison that he had been in before he was Hospitalized for 36 days, and failed to provide him additional warm clothing or additional blankets, but instead required him to remain in his freezing cell in just a tee shirt and thin prison pants.

69.    Upon Mr. Crummel's return to DCP in January, he was initially showing signs of improvement from his prior condition before he was hospitalized.

70.    But, upon returning to the prison, and being placed in his same freezing cold cell, Mr. Crummel soon began exhibiting many of the symptoms that he exhibited prior to being hospitalized for hypothermia, including lethargy, failure to eat, slow speech and the inability to communicate with Defendants.

71.    On January 25, 2022, Defendant Martin documented:

Patient seen in medical office. Patient was treated at Harrisburg for a variant of Steven Johnson syndrome (TEN) it was felt it was due reaction to Depakote; However our records indicated he was not taking depakote. Patient has a diagnosis of Schizoaffective Disorder, bipolar; He was started on lnvega during his stay at Harrisburg Hospital. The Haldol and cogentin which he had been on were stopped. Clonidiine was also stopped; Clonazepam was stopped yesterday before arriving here. The patient today spoke with slurred speech; he was delusional and grandiose.; he also manifested loose associations and flight of ideas

72.    On January 28, 2022 Defendant Sultzbach documented:

this nurse (*i.e.*, Defendant Sultzbach) went to block with ordered injection at approx 0820 pt appeared very lethargic when this nurse entered cell. Pts speech was slow and mumbled. Pt was not in agreeance with ordered injection at this time reports " i just got my injection" showing this nurse his bandaid on his right arm. Pt was correct and received first injection of lnvega Sustenna prior to release at the hospital (1/21/22) Pt stated" Im not to get it for another month. Pt was not willing to receive ordered injection. Spoke to med nurse pt refused am medications as well. Discussed with Provider. continue to offer through out the weekend.

73.    On January 30, 2022, Defendant Thomas documented that the Decedent refused his AM medication, refused to answer if he wanted his meds. he just sat on his bed and said nothing.

74.    On the morning of January 31, 2022, at 5:27, Defendant Magwood documented as follows:

This nurse was called to see patient in his cell due to being lethargic and face lying on bed in cell. Attempted to get vitals on patient but he became combative and starting yelling. Patient did not eat dinner and appears to be in an altered mentally state. Patient has been tasked to provider line for review and further evaluation.

75.    Despite noting this urgent situation, mental health was not notified until, at the earliest, more than an hour later, and possibly more than three hours later.

76.    On January 31, 2022, at 11:59 a.m., a late entry reflecting a 7:50 a.m. visit with Decedent, Defendant Rosas documented as follows:

> Late entry from 0750h. After receiving verbal report from nursing staff indicating IM was in some type of agitated state that represented a mental status change that occurred at some point over the weekend, as best understood at that time. This author went on to M unit prior to daily AM interdepartmental meeting (PCM and treatment staff members in attendance) in observe IM's status. I was escorted to M13 by CO Burns and observed IM Crummel laying face down, facing interior wall (away from window), partially covered as right leg and also blank were hanging off partially off the bed. Slight movement observed, no distress or signs of acute medical event observed. Objective of this interaction was to determine current mental status and to report details to BHS team and psych provider in order to develop plan of care accordingly. Details and finding provided verbally to BHS team members. Following AM meeting, upon returning to medical dept approx 0915h, medical emergency radio call occurred and this author provided support activities pursuant to acute medical event.

77.    In another late entry from January 31, 2022, with no corresponding time of visit, Defendant Stokes documented as follows:

> During AM pill call inmate was asleep in prone position. When asked if he wanted his morning medicine inmate made responded with a quiet "mmm" sound but did not move. Nurse observed inmate's back rising and falling with a normal rhythm. Mental health was informed about mental decline. At approximately 0930 medical emergency was call for unresponsive episode. All available medical staff responded. CPR was initiated and EMS was called. AED was applied with no shock advised. Several cycles of CPR were performed until directed by EMS to stop compressions.

78.    On January 31, 2022, at 10:56 a.m., the following was documented:

Medical Emergency called at 0929 for inmate being unresponsive. At approximately 0930, this nurse. MA Katie M, Autumn B, Jess N and Shade C arrived at the patients cell. Patient was lying prone on his bunk with his face positioned to the right. This nurse checked for a pulse, no pulse found, this nurse and CO Burns flipped the patient over onto his back where it was then noted that the patient had frothy secretion coming from his mouth, incontinent of urine and had fixed pupils. Compressions were immediately started approx 0930. AED was applied by Katie M, MA - no shocks were advised. CPR was continued and EMS was called and arrived on scene at approx. 0938 where EMS then took charge of code. This nurse along with other medical staff on scene, continued rotating CPR and other directives/tasks as per EMS/paramedic.

79.    It was further documented that Mr. Crummel's eyes were open, fixed, and dilated, he appeared to have wet himself and his skin was cold to the touch.

80.    Defendants called 911, but all efforts to revive Mr. Crummel were futile, and he died.

81.    The coroner determined that the cause of death was Hypothermia.

82.    On January 31, 2022, Defendant Sultzbach also documented that ***no food logs were entered since January 26, 2022***.

83.    Following January 26, 2022, when the Decedent stopped eating, the Decedent was seen by, among others, Defendants Sultzbach, Crawford, Brennan, Sheely, Metz, Reidel, Gordon, and Magwood.

84.    After Mr. Crummel's death, the District Attorney for Dauphin County admitted to reporters that the area in the prison where the Decedent was housed was much colder than other parts of the prison.

85.    Despite the fact that Mr. Crummel was exhibiting many of the symptoms associated with Hypothermia, Defendants failed to monitor his vitals, or move him to a warmer part of the prison, and were deliberately indifferent to his serious medical needs and his right to humane conditions of confinement.

86.    Defendants Dauphin County and Warden Gregory Briggs were responsible for ensuring that inmates were provided safe and humane conditions of confinement, including ensuring that DCP was adequately heated in the winter months.

87.    Defendants Dauphin County and Warden Gregory Briggs were deliberately indifferent to the Decedent's health and safety, and created inhumane conditions of confinement when they failed to ensure that the Decedent's cell had adequate heat, and they failed to ensure that the Decedent had adequate clothing and blankets to ward of the cold during the winter months.

88.    Defendants Dauphin County and Warden Gregory Briggs knew that the Decedent had been Hospitalized for 36 days for Hypothermia and near fatal diseases/illness and  were deliberately indifferent to the Decedent's health and safety, and created inhumane conditions of confinement when, upon the Decedent's return

to DCP in January of 2022 after suffering from Hypothermia and other near fatal diseases/illnesses, they did not require that the Decedent be placed in a warmer part of the prison that had heat, or that the Decedent be provided warmer clothes and more blankets but instead allowed him to be placed in the same cold cell or area of the prison with the bare minimum of clothes and blankets to ward off the cold.

89.    Defendants Dauphin County and Warden Gregory Briggs knew that the Decedent had been allowed to remain for days in his cell, covered in feces and unrine and in wet conditions caused by the flooding of the cell, and that these conditions contributed to his Hypothermia and exacerbated and accelerated his declining physical and mental condition, and were deliberately indifferent to the Decedent's health and safety, and created inhumane conditions of confinement when they failed to address and alleviate the conditions in which the Decedent was being housed.

90.    Defendants Dauphin County and Warden Gregory Briggs had an unconstitutional custom, practice and policy of acquiescing in unconstitutional, inhumane conditions of confinement, including a lack of adequate heat/clothing/blankets in DHP during the winter months, and permitting inmates to remain for days in cells covered in water, feces, urine and food.

91.    Defendants Dauphin County and Warden Gregory Briggs had an unconstitutional custom, practice and policy of not providing adequate heat or adequate clothing during the winter months that was the direct and/or proximate

cause of the Decedent dying of Hypothermia and resulted in inhumane conditions of confinement.

92.    Defendants PrimeCare Medical, Inc., CEO Thomas Weber, Esquire, COO Todd Haskins, and Corporate Medical Director John Doe had unconstitutional customs, practices and policies regarding the training of Health Care Providers hired by PrimeCare Medical, Inc. to provide health care to the prisoners at DCP, which included failure to adequately train the health care providers regarding the need to examine and diagnosis inmates with medical conditions, to treat inmates with serious medical conditions, to ensure that the inmates are housed in sanitary conditions, to ensure that the inmates are prescribed and receive needed medications, to monitor inmates who are suffering from serious mental and physical medical conditions, and to not attempt to cover up their deliberate indifference by downplaying an inmates serious medical condition in the medical documents or by lying regarding an inmates serious medical condition to other health care providers.

93.    Defendants PrimeCare Medical, Inc., CEO Thomas Weber, Esquire, COO Todd Haskins, and Corporate Medical Director John Doe had unconstitutional customs, practices and policies regarding the need adequately to examine and diagnosis inmates with medical conditions, to treat inmates with serious medical conditions, to ensure that the inmates are housed in sanitary conditions, to ensure that the inmates are prescribed and receive needed medications, to monitor inmates

who are suffering from serious mental and physical medical conditions, and to not attempt to cover up their deliberate indifference by downplaying an inmates serious medical condition in the medical documents or by lying regarding an inmates serious medical condition to other health care providers.

94.    The need for Defendants PrimeCare Medical, Inc., CEO Thomas Weber, Esquire, COO Todd Haskins, and Corporate Medical Director John Doe to have more adequate training and customs, practices and policies regarding the need adequately to examine and diagnosis inmates with medical conditions, to treat inmates with serious medical conditions, to ensure that the inmates are housed in sanitary conditions, to ensure that the inmates are prescribed and receive needed medications, to monitor inmates who are suffering from serious mental and physical medical conditions, and to not attempt to cover up their deliberate indifference by downplaying an inmates serious medical condition in the medical documents or by lying regarding an inmates serious medical condition to other health care providers is obvious and would be obvious to a lay person.

95.    Defendants PrimeCare Medical, Inc., CEO Thomas Weber, Esquire, COO Todd Haskins, and Corporate Medical Director John Doe promulgated unconstitutional customs, practices and policies were the direct and proximate cause of the Decedent's prolonged suffering and death.

96.    Defendants were deliberately indifferent to the Decedent's serious

medical needs by, among other things:

      a.  Failing to examine, diagnosis and treat the Decedent's rash.

      b.  Failing to diagnose and treat the Decedent's Schizophrenia and serious mental health issues.

      c.  Failing to diagnose and treat the Decedent's SJS/TEN.

      d.  By allowing the Decedent to remain in his cell when it was unsanitary and covered in feces, urine, vomit, food and water.

      e.  By failing to diagnosis and treat Decedent's Hypothermia.

      f.  By failing to examine the Decedent before prescribing medication or by denying the Decedent needed medication without examining or diagnosing him.

      g.  By failing to monitor the Decedent when he returned to DCP from the Hospital in January and by failing to address the conditions that caused Hypothermia when he returned to DCP in January.

      h.  By downplaying the Decedent's serious medical condition on medical documents, resulting in his not receiving treatment.

      i.  By lying regarding the Decedents serious medical condition to other medical providers, resulting in his not receiving treatment.

97.    The above deliberate indifference of Defendants was the proximate

cause of Decedent's suffering, pain, and death.

**COUNT I - 42 U.S.C. § 1983**
**DUE PROCESS-- INADEQUATE MEDICAL CARE**
**PLAINTIFF v. ALL INDIVIDUAL HEALTH CARE PROVIDERS,**
**PRIMECARE MEDICAL, INC., CEO WEBER, COO HASKINS,**
**CORPORATE MEDICAL CARE DIRECTOR JOHN DOE**

98.    All of the preceding paragraphs are incorporated by reference as if more fully set-forth herein.

99.    The Decedent had a serious medical condition that included, but was not limited to Schizophrenia and serious mental health issues, SJS/TEN and Hypothermia.

100.    Defendants knew that Decedent had serious medical conditions and needs and were deliberately indifferent to those needs by ignoring those medical conditions and/or failing examine, diagnosis and treat the Decedent for his serious medical conditions.

101.    As a direct and proximate result of the malicious, intentional, deliberate, and/or reckless actions of aforementioned Defendants, the Decedent suffered in excruciating pain and died.

102.    The above-described actions of the aforementioned Defendants were so malicious, intentional and reckless and displayed such a reckless indifference to the Decedent's rights and well-being, that the imposition of punitive damages is warranted.

**WHEREFORE**, pursuant to 42 U.S.C. §1983, Plaintiff demands compensatory and punitive damages against the Defendants in an amount sufficient to fully and adequately compensate the Plaintiff and punish and deter the defendants, plus interest, costs, attorney's fees and all other appropriate relief.

## COUNT II – 42 U.S.C. § 1983
## DUE PROCESS—INHUMAN CONDITIONS OF CONFINEMENT
## PLAINTIFF v. ALL DEFENDANTS

103.   All of the preceding paragraphs are incorporated by reference as if more fully set-forth herein.

104.   All Defendants knew that DCP was not adequately heated, it was winter, and the outside temperature was extremely cold and that the inmate at DCP were only dressed in a tee shirt and thin prison pants and had only one blanket.

105.   All Defendants knew that the Decedent had been required to remain in his cell for extended periods of time and that his cell was covered in water, feces, vomit, urine and food and was unsanitary.

106.   After Decedent had returned to DCP from the Hospital in January of 2022, all Defendants knew that developed Hypothermia in the prison in December of 2021, when the temperatures were much warmer, yet the Decedent was returned to the same cold, heatless cell in the cold part of the prison, with only a tee shirt, thin prison pants and one blanket.

107.   The condition of Decedent's cell was inhumane and constituted an inhumane condition of confinement.

108.   All Defendants were deliberately indifferent to the inhuman conditions of confinement the Decedent was required to endure while housed at DCP.

109.    As the direct and proximate result of all Defendants deliberate indifference to the inhumane conditions of confinement the Decedent was suffered in psychological and physical pain and died.

110.    The above-described actions of the aforementioned Defendants were so malicious, intentional and reckless and displayed such a reckless indifference to the Decedent's rights and well-being, that the imposition of punitive damages is warranted.

**WHEREFORE**, pursuant to 42 U.S.C. §1983 and §1988, Plaintiff demands compensatory and punitive damages against all Defendants in an amount sufficient to fully and adequately compensate the Plaintiff and punish and deter the defendants, plus interest, costs, attorney's fees and all other appropriate relief.

## COUNT III – 42 U.S.C. § 1983
## ADA CLAIM
## PLAINTIFF v. DAUPHIN COUNTY

111.    All of the preceding paragraphs are incorporated by reference as if more fully set-forth herein.

112.    Decedent was qualified individual with a disability, namely Schizophrenia and other mental health issues, who was discriminated against by Defendant Dauphin County as a result of is disability.

113.    Specifically, Defendant failed to provide the Decedent the medical care that his Schizophrenia and other mental health issues required, and instead allowed

the Decedent to decompensate and suffer a severe mental breakdown that included

smearing his cell walls with feces, urinating and flooding his cell with water, and

then requiring him to stay in the cell in this condition.

114.    Defendant discriminated against the Decedent by failing to

accommodate his disability by providing adequate medical care for his condition,

including but not limited to psychiatric care.

115.    The above-described actions of the Defendant was so malicious,

intentional and reckless and displayed such a reckless indifference to the Decedent's

rights and well-being, that the imposition of punitive damages is warranted.

**WHEREFORE**, pursuant to the ADA, Plaintiff demands compensatory and

punitive damages against the Defendant in an amount sufficient to fully and

adequately compensate the Plaintiff and punish and deter the defendants, plus

interest, costs, attorney's fees and all other appropriate relief.

### COUNT IV- 42 U.S.C. § 1983
#### *Monell* Claim
### PLAINTIFF v. DAUPHIN COUNTY, PRIMECARE MEDICAL, INC., WARDEN BRIGGS, CEO WEBBER AND COO HASKINS

116.    All of the preceding paragraphs are incorporated by reference as if more

fully set-forth herein.

117.    Defendants Dauphin County, PrimeCare Medical, Inc., Warden Briggs,

CEO Webber and COO Haskins have adopted and maintained for many years a

recognized and accepted policy, custom, and practice of condoning and/or the

acquiescence of the deliberate indifference to serious medical needs of citizens, arrestees, detainees and inmates, including the Decedent, and of subjecting them to the same type of treatment to which Decedent was subjected, which policy violates the Due Process Clause of the Fourteenth Amendment of the Constitution of the United States.

118.    The aforementioned unconstitutional policy, custom and practice includes inadequate policies and procedures regarding the need for medical providers to examine, diagnose and treat inmates/pretrial detainees with serious medical needs, including the Decedent, and failing to provide human conditions of confinement, which includes, but is not limited to, failing to provide adequate heat in DCP during the winter months, and allowing mentally ill inmates/pretrial detainees to remains in cell covered in feces and urine and water from flooding of the cell.

119.    The aforementioned unconstitutional policy, custom and practice includes inadequate training of medical providers regarding the need to examine, diagnosis and treat inmates/pretrial detainees with serious mental and physical medical conditions, including the Decedent, and failing to train medical providers on the need to ensure that the conditions in which the inmate is housed are sanitary and humane.

120.    Defendants Dauphin County, PrimeCare Medical, Inc., Warden Briggs, CEO Webber and COO Haskins for more adequate policies and procedures regarding the requirement to examine, diagnose and treat inmates/pretrial detainees with serious mental and physical medical conditions and to ensure sanitary and humane conditions of confinement is obvious, and the failure of the aforementioned Defendants to provide constitutes deliberate indifference in violation of the Decedents right to a safe and human conditions of confinement under the Due Process Clause of the Fourteenth Amendment.

121.    As the direct and proximate cause of Defendants Dauphin County, PrimeCare Medical, Inc., Warden Briggs, CEO Webber and COO Haskins the Decedents right under the Due Process Clause were violated and he suffered prolong pain and agony and died.

**WHEREFORE**, pursuant to 42 U.S.C. § 1983 and § 1988, Plaintiff demands compensatory damages against Defendants Dauphin County, PrimeCare Medical, Inc., Warden Briggs, CEO Webber and COO Haskins jointly and/or severally, in an amount sufficient to fully and adequately compensate the Plaintiff, plus interest, costs, attorney's fees and all other appropriate relief.

## <u>COUNT V – CORPORATE NEGLIGENCE/GROSS NEGLIGENCE</u>
## <u>PLAINTIFF v. PRIMECARE MEDICAL, INC.</u>

122.    All of the preceding paragraphs are incorporated by reference as if more fully set-forth herein.

123.    The direct corporate negligence, gross negligence and carelessness of Defendant PrimeCare Medical, Inc. includes, but is not limited to:

   a.    Failure to properly train its employees, agents, and ostensible agents regarding the need to ensure that inmates with serious mental and physical medical conditions are examined, diagnosed and treated.

   b.    Failure to properly train its employees, agents, and ostensible agents regarding the need for sanitary and humane conditions in the cells;

   c.    Failure to formulate, adopt, and/or enforce adequate rules, policies and/or procedures to ensure that inmates with severe mental health issues receive needed medicines and psychological services such as counseling, therapy and psychiatric assessments:

   d.    Failure to establish policies to ensure that inmates with severe mental and physical health issues that are being are monitored or seen as recommended and on a regular basis

124.    Defendant PrimeCare Medical, Inc., had actual and/or constructive knowledge of the above acts and omissions which caused harm, increased the risk of harm, and were substantial factors in causing the injuries and wrongful death of the Decedent.

32

125.   The direct corporate and/or gross negligence and carelessness of Defendant PrimeCare Medical, Inc. set forth herein caused harm, increased the harm, and was a substantial factor in causing the injuries and wrongful death of the Decedent.

**WHEREFORE**, Plaintiff, as the administrator of the Estate of Jamal Crummel, demands judgment against Defendant PrimeCare Medical, Inc. for an amount in excess of One Hundred Fifty Thousand ($150,000.00), including all damages available pursuant to 42 U.S.C. §1983 and §1988, including compensatory and punitive damages against Defendant PrimeCare Medical, Inc., plus interest, costs, attorney's fees, and all other appropriate relief.

## COUNT VI – NEGLIGENCE/VICARIOUS LIABILITY
## PLAINTIFF v. ALL MEDICAL CARE PROVIDERS

126.   All of the preceding paragraphs are incorporated by reference as if more fully set-forth herein.

127.   Defendants had a duty to render reasonable, proper, adequate and appropriate medical care to Plaintiff's Decedent and to protect him from harm.

128.   As detailed above, the aforementioned Defendants were negligent and careless, and breached their duty of care the Plaintiff's Decedent, and said negligence and carelessness was a substantial factor causing the injuries and wrongful death of the Decedent.

129.   Defendant PrimeCare Medical, Inc. is liable for the negligent conduct of the aforementioned Defendants pursuant to the principles of agency, ostensible agency, vicarious liability and/or respondeat superior.

**WHEREFORE**, Plaintiff, as the administrator of the Estate of Jamal Crummel, demands judgment against Defendants jointly and severally, for an amount in excess of One Hundred Fifty Thousand ($150,000.00), including all damages available pursuant to 42 U.S.C. §1983 and §1988, including compensatory and punitive damages against Defendant PrimeCare Medical, Inc., plus interest, costs, attorney's fees, and all other appropriate relief.

<u>**COUNT VII – WRONGFUL DEATH**</u>
<u>**PLAINTIFF v. ALL DEFENDANTS**</u>

130.   All of the preceding paragraphs are incorporated by reference as if more fully set-forth herein.

131.   Plaintiff brings this action pursuant to the Wrongful Death Act 42 Pa. C.S.A. Section 8301 and claims all damages recoverable under the Pennsylvania Wrongful Death Act.

132.   As a direct and proximate result of the aforementioned actions of the Defendants, the Decedent, Jamal Crummel, his family and his estate have suffered severe emotional and pecuniary losses and damages including the following:

(a)   an amount which will cover all funeral, burial and estate administration expenses incurred;

34

(b)    an amount which will fairly and adequately compensate the family members of the decedent for their loss of such contributions as they would have received between the time of the death of the decedent and today. This includes all monies that the decedent would have spent for or given to his family;

(c)    an amount which will fairly and adequately compensate his family for the loss of such contributions as the decedent would have contributed to the support of his family between today and the end of his normal life expectancy; and

(d)    an amount which will fairly and adequately compensate his family for the pecuniary and emotional value of the services, society and comfort that he would have given to his family had he lived including such elements as provision of physical comfort and services and provision of society and comfort.

133.   As a direct and proximate result of the Defendants' wrongdoing as set forth above, which is incorporated herein, Jamal Crummel's Wrongful Death beneficiaries suffered, are suffering, and will, for an indefinite period of time in the future, suffer damages, injuries and losses including but not limited to, a loss of financial support, and the beneficiaries have been wrongfully deprived of the contributions they would have received from him, including monies which he would have provided for items such as clothing, food, shelter, medical care, education and entertainment, recreation and gifts.

134.    As a direct and proximate result of Defendants' wrongdoing as set forth above, which is incorporated herein, Jamal Crummel's Wrongful Death beneficiaries have been caused to incur and pay various expenses for medical treatment, hospital care, custodial care, nursing care and medications, and funeral and other expenses related to his death.

**WHEREFORE**, pursuant to 42 U.S.C. § 1983 and Pennsylvania Negligence Law, Plaintiff, as the administrator of the Estate of Jamal Crummel, demands compensatory and punitive damages against all Defendants, jointly and/or severally, in an amount sufficient to fully and adequately compensate the Plaintiff, plus interest, costs, attorney's fees and all other appropriate relief.

<u>**COUNT VII – SURVIVAL ACTION**</u>
<u>**PLAINTIFF v. ALL DEFENDANTS**</u>

135.    All of the preceding paragraphs are incorporated by reference as if more fully set-forth herein.

136.    Plaintiff brings this action on behalf of the Estate of Jamal Crummel, deceased, by virtue of the Survival Act, 42 Pa.C.S.A. § 8302, and claims all benefits of the Survival Act on behalf of the Estate of Jamal Crummel and other persons entitled to recover under law.

137.   As a direct and proximate result of the aforementioned actions of the defendants, the decedent, Jamal Crummel, his family and his estate are entitled to damages which shall include the following:

(a)   an award of the total net amount that the decedent would have earned between the date of his death and today;

(b)   an award of the net amount that the decedent would have earned between today and the natural end of the decedent's life expectancy; and

(c)   an award of such an amount as will fairly and adequately compensate the estate for the mental and physical pain and suffering that the decedent endured from the moment of the improper treatment by the defendants to the moment of his death as a foreseeable result of the improper treatment.

138.   As a direct and proximate result of Defendants' wrongdoing as set forth above, which is incorporated herein, Plaintiff claims on behalf of the Estate of Jamal Crummel, all damages suffered by the Estate by reason of the death of Jamal Crummel, including without limit the generality of the following: the severe injuries to Jamal Crummel, which resulted in his death; the anxiety, horror, fear of impending death, mental disturbance, pain, suffering and other intangible losses which Jamal Crummel suffered prior to his death; the loss of past, present and future earning capacity suffered by Jamal Crummel, from the date of his death until the time in the future he would have lived had he not died as a result of the injuries he sustained;

expenses for medical care; the loss and total limitation and deprivation of his normal activities, enjoyment of life, pursuits and life's pleasures from the date of his death until such time in the future as he would have lived had he not died as a result of the injuries sustained.

**WHEREFORE**, pursuant to 42 U.S.C. § 1983 and Pennsylvania Law, the Plaintiff, as administrator for the Estate of Jamal Crummel, demands compensatory and punitive damages against defendants, jointly and/or severally, in an amount sufficient to fully and adequately compensate the Plaintiff, plus interest, costs, attorney's fees and all other appropriate relief.


                                        **KLINE & SPECTER, P.C.**

Date: <u>March 25, 2024</u>        By:    <u>*/s/ Benjamin O. Present*</u>
                                        **THOMAS R. KLINE, ESQ.**
                                        **BENJAMIN O. PRESENT, ESQ.**
                                        **HELEN A. LAWLESS, ESQ.**
                                        1525 Locust Street
                                        Philadelphia, PA 19102
                                        215-772-1000 phone
                                        215-792-5589 fax
                                        *Attorney for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

I, Benjamin O. Present, Esquire, hereby certify that a true and correct copy of Plaintiff's Amended Complaint was electronically filed with the Court this date and is available for viewing and downloading from the ECF System.

**KLINE & SPECTER, P.C.**

*/s/ Benjamin O. Present*
BENJAMIN O. PRESENT, ESQ.
*Attorney for Plaintiff*

Date: <u>March 25, 2024</u>