# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JIMMY LEE CRAWFORD, AS ADMINISTRATOR OF THE ESTATE OF JAMAL CRUMMEL, DECEASED | : : : : : : : | CIVIL ACTION NO.<br><br>1:23-cv-01380 |
| **Plaintiff,** | : : | |
| v. | : : | |
| DAUPHIN COUNTY, ET AL | : : | JURY TRIAL DEMANDED<br>*Electronically Filed* |
| **Defendants** | : : : | |

## PLAINTIFF'S BRIEF IN OPPOSITION TO PRIMECARE DEFENDANTS' PARTIAL MOTION TO DISMISS PLAINTIFF'S <u>SECOND AMENDED COMPLAINT</u>

## I.    PROCEDURAL HISTORY

Plaintiff filed a Complaint on August 18, 2023 and amended it November 13, 2023. While Motions to Dismiss the Amended Complaint were pending, undersigned counsel entered their appearances. All parties agreed to stay the case while undersigned counsel got up to speed. Afterwards, Plaintiff filed a Second Amended Complaint ("SAC"), removing 15 Defendants from the case and adding

allegations against the remaining defendants. Further Motions to Dismiss were filed, including by PrimeCare Defendants.[1]

## II.    FACTS

This case stems from Defendants' knowing disregard for Jamaal Crummel's life-threatening medical needs, which led Mr. Crummel to suffer a slow and torturous death in atrocious conditions of confinement at the Dauphin County Prison ("DCP").

Mr. Crummel was first arrested in September of 2021. During his incarceration, the PrimeCare Defendants are noted at important junctures in Mr. Crummel's medical chart, interacted with him, and were on notice of his atrocious conditions of confinement. For example:

- Shortly after his admission to DCP, in September of 2021, Defendants Shade Crawford, PA and Robert Nichols, Psy.D., took Mr. Crummel off suicide watch. *See* SAC, ¶ 25. After this, Mr. Crummel's mental state deteriorated substantially.

- Defendant Marielle Ritchie was summoned to Mr. Crummel's cell in early November 2021 to address a rash, tenderness and bleeding in Mr. Crummel's scrotum area, but she never examined him. *Id.* ¶ 28.

---

[1] Contrary to Defendants' Motion, following Plaintiff's most recent Amendment, the PrimeCare Defendants are: PrimeCare Medical, Inc. ("PrimeCare"); Autumn Brennan, EMT; Laura (a.k.a. Lauri) Case, PMHNP-BC; Shade Crawford, PA; Susan Deloe, LPN; Tia Drabich; Adriane Freeman, NP; Nicole Gallup; Tashawna Gordon, MA; Todd Haskins; Leslie Irons, LPN; Nicole Magwood, LPN; Enos Martin, MD; Katie McGinn (a/k/a Kathryn A. Sciotti); Tykeisha Metz, MA; Mildred Montalvo, MA; Robert Nichols, Psy.D.; Jessica Nye; Johanna Riedel, MA; Marielle Ritchie; Carla Rotheram; Mallory Stokes, LPN; Cheree Sultzbach; Addonna Thomas, LPN; Thomas Weber, Esquire; Diane Wolfe, RN; and Kayla Zeiders-Heichel, LPN.

- Defendant Cheree Sultzbach noted in December of 2021 that Mr. Crummel was flooding his cell with water and not responding to external stimuli. *Id.* ¶ 37.

- Later that month, after Mr. Crummel had vomited several times throughout the night, Defendant Sultzbach, along with Defendants Susan Deloe, LPN, and Lauri Case, PMHNP-BC noted just how terrible the conditions of Mr. Crummel's cell had gotten – it had a pungent smell, and there was vomit, food, urine, feces and water on the floor. *Id.* ¶ 42. These Defendants were all also aware that Mr. Crummel's physical health was rapidly declining. *Id.*

Following this, Mr. Crummel was briefly hospitalized, diagnosed with "low potassium," and returned to DCP a day later. Upon returning to DCP, Mr. Crummel's symptoms had not resolved, and on December 17, 2021, Defendant Lauri Case noted that Mr. Crummel's cell was still scattered with food debris.

On December 19, Defendant Tia Drabich and Stephanie Deitz, R.N., entered Mr. Crummel's cell to physically examine him. They found Mr. Crummel had slurred speech, dry oral mucosa, macerated skin on his hands and feet, incontinence, tachycardia, was breathing abnormally, and smelled of urine. Defendant Drabich noted "Multi system organ failure."

At this time, Mr. Crummel was again hospitalized. His condition was so bad at DCP that he was thought to be having a stroke (though this was later ruled out). He was admitted to the ICU for multi-system organ failure and placed on a Bear Hugger Temperature Monitoring System to treat his Hypothermia. Doctors asked Defendants about the scaling rash on Mr. Crummel's penis and scrotal area, but PrimeCare Defendant Nicole Gallup denied knowledge of any rash. *Id.* ¶ 59. Around

this time, Mr. Crummel was diagnosed with Johnson Syndrome/Toxic Epidermal Necrolysis ("SJS/TEN"). Defendant Ritchie's prior failure to diagnosis/treat Mr. Crummel's skin rash resulted in his developing SJS/TEN and suffering extreme pain. While at the hospital, Mr. Crummel's skin condition was so severe that the Hospital recommended transferring him to a burn unit at Mercy Hospital in Pittsburgh, however the Defendants would not permit this.

Instead, Mr. Crummel returned to the atrocious conditions at DCP, where *all* Defendants, *including PrimeCare Defendants*:

- knew that the Decedent suffered from schizophrenia and other serious mental health issues from his prior incarceration at DCP, and his current intake at DCP, and further knew that his conduct was related to a serious schizophrenic/bipolar episode. *Id.* ¶ 36.

- knew that DCP was not adequately heated, that it was winter, and that the outside temperature was extremely cold and that the inmates at DCP were only dressed in a tee shirt and thin prison pants and had only one blanket. *Id.* ¶ 104; and

- knew that Mr. Crummel had been required to remain in his cell for extended periods of time and that his cell was covered in water, feces, vomit, urine and food and was unsanitary. *Id.* ¶ 105.

Following Mr. Crummel's return to the DCP, PrimeCare Defendants' callous indifference persisted. He was in the same freezing cell and soon began exhibiting the symptoms he showed prior to being hospitalized for hypothermia: lethargy, failure to eat, slow speech, and inability to communicate.

On January 30, Defendant Thomas documented that Decedent refused his medication or answer if he wanted his meds. He just sat on his bed and said nothing.

On the morning of January 31 at 5:27am, Defendant Magwood documented as follows:

> This nurse was called to see patient in his cell due to being lethargic and face lying on bed in cell. Attempted to get vitals on patient but he became combative and starting yelling. Patient did not eat dinner and appears to be in an altered mentally state. Patient has been tasked to provider line for review and further evaluation.

Despite this urgent situation, mental health was not notified until, at the earliest over an hour later, and possibly more than three hours later. That same day, Defendants documented Mr. Crummel's eyes were open, fixed, and dilated; he wet himself; his skin was cold to the touch. Defendants called 911, but efforts to revive Mr. Crummel failed, and he died. His cause of death was hypothermia. This same day, Defendant Sultzbach also documented that ***no food logs were entered since January 26, 2022***. Just with respect to the period following January 26, when the Decedent stopped eating, Mr. Crummel was seen by, among others, PrimeCare Defendants Sultzbach, Crawford, Brennan, Sheely, Metz, Reidel, Gordon, and Magwood. After Mr. Crummel's death, the Dauphin County District Attorney told reporters that where Mr. Crummel was housed was much colder than other parts of the prison. Defendants knew this, and, even though Mr. Crummel was exhibiting

many symptoms associated with Hypothermia, Defendants failed to monitor his vitals, or adequately heat his cell.

## III.   STATEMENT OF THE QUESTIONS INVOLVED

### Questions:

1. Should the Court decline to dismiss Plaintiff's cause of action for denial of adequate medical care where Plaintiff has amply pled facts to demonstrate a deliberate indifference to a serious medical condition?

2. Should the Court decline to dismiss Plaintiff's cause of action for inhumane conditions of confinement where Plaintiff has pled facts showing his cell was freezing and unsanitary, and Defendants knowingly allowed this?

3. Should the Court decline to dismiss Plaintiff's *Monell* claim against PrimeCare, Thomas Weber and Todd Haskins where Plaintiff has alleged deliberate indifference to Mr. Crummel's serious medical condition, resulting directly from PrimeCare's policies, practices, and customs?

4. Should the Court decline to dismiss Plaintiff's claim for punitive damages where Plaintiff has pled sufficient facts to show recklessness and where Defendants' state of mind may be averred generally?

   **Suggested Answer to All:** Yes.

## IV.   ARGUMENT

### A. Legal Standard

A claim may only be dismissed for "failure to state a claim upon which relief can be granted."  FED. R. CIV. P. 12(b)(6). A Complaint must have "a short and plain statement of the claim showing that the pleader is entitled to relief." *Id.* (quoting F.R. CIV. P. 8(a)(2)). "Rule 8(a)(2) does not require heightened fact pleading of specifics,

but only enough facts to state a claim to relief that is plausible on its face." *Zielinski v. Whitehall Manor, Inc.*, 899 F. Supp. 2d 344, 347 (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

When considering a Rule 12(b)(6) motion, courts conduct a two-part analysis. *Fowler v. UMPC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). First, the court separates the factual matters averred in the complaint and any attached exhibits from legal conclusions asserted. *Id*. Second, the court determines whether those factual matters averred are sufficient to show that the plaintiff has a "plausible claim for relief." *Id*. at 211 (*quoting Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). This two-part analysis is "context-specific" and requires the court to draw on "its judicial experience and common sense" to determine if the facts pled in the complaint have "nudged [plaintiff's] claims" over the line from "[merely] conceivable [or possible] to plausible." *Iqbal*, 556 U.S. at 679-680.

In determining whether a complaint is sufficient, the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler*, 578 F.3d at 210 (citation omitted). "[A] complaint may not be dismissed merely because it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits." 515 F.3d at 231 (quoting 550 U.S. at 556). Further, a well-pled complaint may not be dismissed

merely because "it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Chruby v. Kowaleski*, 534 F. App'x. 156, 160 (3d Cir. 2013) (quoting 550 U.S. at 556).

**B. Plaintiff's Complaint Alleges Sufficient Facts to Demonstrate That Defendants Were Deliberately Indifferent to Plaintiff-Decedent's Medical Needs When They Ignored His Deteriorating Condition.**

In the seminal case of *Estelle v. Gamble*, the Supreme Court determined that "deliberate indifference to the serious medical needs of prisoners constitutes the "unnecessary and wanton infliction of pain"" violative of the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). "The [Eighth] Amendment embodies "broad and idealistic concepts of dignity, civilized standards, humanity, and decency . . .""" *Id*. (quoting *Jackson v. Bishop*, 404 F.2d 571, 579 (8th Cir. 1968)). In order to substantiate a civil rights claim brought under Section 1983 for a violation of the Eighth Amendment, a prisoner must allege acts or omissions sufficiently harmful and that evidence deliberate indifference to serious medical needs. *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir.1999). This standard is equally applicable to pretrial detainees via the Due Process Clause of the Fourteenth Amendment. *Boring v. Kozakiewicz*, 833 F.2d 468, 471 (3d Cir. 1987) (citing *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983)).

Inmate plaintiffs at the motion to dismiss stage must plead facts that demonstrating the "(1) plaintiff had a serious medical need, and that (2) the

defendant was aware of this need and was deliberately indifferent to it." *Farmer v. Brennan*, 511 U.S. 825 (1994); 182 F.3d at 197 (citing 429 U.S. at 106). "[D]eliberate indifference" [may arise] in a variety of circumstances, including where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment."" *Rouse*, 182 F.3d at 197. *See also Estelle*, 429 U.S. at 104; *Pearson v. Prison Health Serv.*, 850 F.3d 526, 538 (3d Cir. 2017). "Short of absolute denial, if necessary medical treatment [i]s ... delayed for non-medical reasons, a case of deliberate indifference has been made out." *Monmouth Co. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 346–47 (3d Cir. 1987) (internal citations omitted).

On the first prong, an objectively serious medical need is sufficiently serious if it is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth*, 834 F.2d at 347. On the second prong, the defendant must have "acted or failed to act despite his knowledge of a substantial risk of serious harm." *Farmer*, 511 U.S. at 841. This level of culpability falls between negligence and actual malice. *Id.* at 836-37. "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of harm." *Id.* at 842.

Plaintiff has sufficiently alleged that defendants were deliberately indifferent to multiple serious medical needs of his, his actively manifesting schizophrenia, visible skin rashes, and detectable hypothermia. On the schizophrenia, Plaintiff has alleged that Mr. Crummel defecated, urinated, and vomited in his cell multiple times while experiencing psychotic episodes. These mental health crises were clearly serious enough to warrant medical attention, and yet, Mr. Crummel was left unaided in unsanitary conditions. Although he was eventually taken to hospital, Plaintiff has alleged that he was left in his cell for four days between December 11 and 15 after his mental condition began deteriorating rapidly, despite multiple providers observing these episodes and the conditions of Mr. Crummel's cell. Similarly, Plaintiff has alleged that defendants knew of and still ignored Mr. Crummel's urinating on himself for two days before providing medical treatment between December 17 and 19.

On the visible skin rash, Mr. Crummel first informed Defendants of this medical need on November 11, but Defendant Ritchie did not diagnose his condition and the prescribed treatment of bacitracin was never provided. In fact, Plaintiff has alleged that Mr. Crummel's life-threatening skin condition of SJS/TEN went undiagnosed and unaddressed for several weeks until a biopsy was performed at the University of Pittsburgh Medical Center ("UPMC") on December 21. By that point, Mr. Crummel's symptoms had significantly worsened, he had visible rashes and skin

sloughing on multiple parts of his body, and he was experiencing systemic symptoms due to the unrestrained spread of the infection. Worse still, at that time, prison officials refused to permit Mr. Crummel be transferred to the specialist burn unit at Mercy Hospital, against the recommendations of UPMC providers.

Finally, regarding the hypothermia, Plaintiff has alleged that Defendants were aware that Mr. Crummel's cell, where he had been housed in since September, was damp and freezing cold, as well as filthy. Further, Defendants were aware Mr. Crummel's cell was colder than other parts of the prison and even than outside during the winter, sometimes below freezing, and Mr. Crummel was still forced to remain in his cell without extra clothes or blankets.

Defendants argue that Plaintiff's Complaint "lumps" them all together. In this regard, Defendants cite *McCracken v. Fulton Cnty.*, No. 3:19-CV-1063, 2020 WL 2767577 (M.D. Pa. May 28, 2020) and *Cupp v. Cnty. of Lycoming*, No. 3:20-cv-001784, 2021 WL 4478304 (M.D. Pa. Sept. 30, 2021). A review of Plaintiff's Complaint reveals that the complaint is a far cry from the pleadings found to be deficient in *McCracken* and *Cupp*. Here, Plaintiff has set forth particularized allegations against all PrimeCare Defendants, stemming from either their individual interactions with Mr. Crummel or the ample basis on which they had notice of the atrocious conditions Mr. Crummel was forced to endure. For each PrimeCare Defendant, Plaintiff has alleged facts sufficient to advance his claims into discovery.

Defendants point to the fact that Mr. Crummel was hospitalized three times during his confinement as if this vitiates their liability. To the contrary, Defendants deliberate indifference to Mr. Crummel's serious medical needs is what caused the need for hospitalization in the first place. Defendants' Motion to Dismiss Plaintiff's claim of deliberate indifference to a serious medical condition should be denied.

### C. Plaintiff's Complaint Alleges Sufficient Facts to Establish That Defendants Created Inhumane Conditions by Housing Plaintiff-Decedent in a Freezing, Unsanitary Cell.

Plaintiff has sufficiently alleged that the conditions of Mr. Crummel's confinement violated the Eighth Amendment. It is well-settled that "the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Helling v. McKinney*, 509 U.S. 25, 31 (1993). The same deliberate indifference standard applicable to deprivations of medical care for prisoners also applies to conditions of confinement. *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). "Whether one characterizes the treatment received by [a prisoner] as inhumane conditions of confinement, failure to attend to his medical needs, or a combination of both, it is appropriate to apply the "deliberate indifference" standard articulated in *Estelle*.'" *Id.* at 303. To state a conditions of confinement claim, a plaintiff must allege facts showing that 1) the condition/s of their incarceration posed a significant risk of serious harm and 2) the defendants acted with "a sufficiently culpable state of mind." *Id.* On the first prong, the plaintiff

must allege that said condition was objectively serious and more than the mere "routine discomfort" that can be assumed of penal confinement. *Hudson v. McMillian*, 503 U.S. 1, 8-9 (1992). Notably, "[s]ome conditions of confinement may establish an Eighth Amendment violation "in combination" when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise— for example, a low cell temperature at night combined with a failure to issue blankets." *Wilson*, 501 U.S. at 301.

It is indisputable that warmth is a basic human need and that its deprivation may result in a constitutional violation under the Eighth Amendment. 501 U.S. at 304. "There can be no dispute that inmates have a right to be free from extreme hot and cold temperatures." *Peterkin v. Jeffes*, 661 F. Supp. 895, 904 (E.D. Pa. 1987); *See also Kates v. Bledsoe*, Civ. No. 11-0391, 2013 WL 4417656, at *8 (M.D. Pa. Aug. 14, 2013) (holding that "inmates "have [. . .] right to be free from extreme hot and cold temperatures.""); *Crosby v. Georgakopoulos*, Civ. No. 03-5232, 2005 WL 1514209, at *6 (D.N.J. June 24, 2005) (same). For example, in *Mammana*, the Third Circuit reversed the district court's dismissal of an inmate's Eighth Amendment claim where he had alleged that he was deprived of warmth in federal prison. *Mammana v. Fed. Bureau of Prisons*, 934 F.3d 368, 371-72 (3d Cir. 2019). Moreover, "whether the cell temperature, the length of the inmate's confinement in

such temperatures, and the failure of prison officials to ameliorate the cold temperatures creates a sufficiently serious deprivation of the human need of adequate shelter to state a claim under the Eighth Amendment is often an issue to be determined by the trier of fact." *Sampson v. Berks Cnty. Prison*, 171 F. App'x 382, 385 (3d Cir. 2006).

Likewise, unsanitary conditions may give rise to a conditions of confinement claim. *Wilson*, 501 U.S. at 301-03. *See also Mitchell v. Dodrill*, 696 F. Supp. 2d 454, 467 (7th Cir. 2010) (noting that inmates have a right "to a minimal level of cleanliness within their cells"); (citing *Peterkin*, 855 F.2d at 1027); *Hoptowit v. Ray*, 682 F.2d 1237, 1258 (9th Cir. 1982) (finding prisoners had a right to adequate sanitation). In *Thomas*, the Third Circuit reversed a grant of summary judgment when a plaintiff demonstrated that he was confined in a "dry cell," a form of incarceration akin to solitary confinement, where he remained in his own feces, was denied means of cleaning himself, and was not provided with basic sanitizing items such as toilet paper. *Thomas v. Tice*, 948 F.3d 133, 146 (3d Cir. 2020) ("It would be an abomination of the Constitution to force a prisoner to live in his own excrement for four days."). The Court noted that these denials were "cruel and unusual because, in the worst case, it can result in physical torture, and, even in less serious cases, it can result in pain without any penological purpose[.]" *Id.* (citing *Estelle*, 429 U.S. at 103).

Further, if a condition of confinement is likely to put an inmate at medical risk, such as placing them at greater risk of infection of a communicable disease, this may give rise to an Eighth Amendment violation. *Helling v. McKinney*, 509 U.S. 25, 33 (1993). This is particularly compelling if a condition of confinement exacerbates the prisoner's preexisting health condition. For example, the Third Circuit has affirmed the district court's denial of summary judgment when a plaintiff proved that exposure to environmental tobacco smoke created a medical need and placed him at greater risk of harm because he was allergic to components of tobacco smoke. *See Atkinson v. Taylor*, 316 F.3d 257, 266-67 (3d Cir. 2003) (discussing prisoners' clearly established right to be free from environmental tobacco smoke and denying that officers were entitled to qualified immunity). *See also Alvarado v. Litscher*, 267 F.3d 648, 653 (7th Cir. 2001) (affirming district court's denial of a 12(b)(6) motion to dismiss where a prisoner alleged that officials' failure to eliminate environmental tobacco smoke in his cell at Dodge Correctional Institution exacerbated his chronic asthma). Similarly, in *Thomas*, the Third Circuit highlighted that the unsanitary conditions the plaintiff was subjected to were particularly abhorrent because the plaintiff was HIV-positive and therefore more susceptible to infections. *Thomas*, 948 F.3d at 146.

Plaintiff has alleged that Mr. Crummel was forced to endure inhumane conditions. Mr. Crummel was housed in a freezing cold cell for weeks at a time, on

multiple occasions, including after his treatment for pneumonia and hypothermia. Mr. Crummel was not provided with any means to combat the extreme cold. This combination of conditions led to a deprivation of the basic need of warmth. *See Wilson*, 501 U.S. at 301. Being forced to live for weeks at a time in a cell that is colder than the external temperature during winter in Pennsylvania is more than "routine discomfort."

These conditions were so unsanitary as to be violative of Mr. Crummel's rights. Mr. Crummel defecated, urinated, and vomited in his cell multiple times while experiencing psychotic episodes and was left in his own filth with no means to clean his cell. This is an infliction of pain for no penological purposes that exceeds the routine discomfort associated with incarceration. On both accounts, Defendants including PrimeCare Defendants who directly interacted with and monitored Mr. Crummel observed and had actual knowledge of these conditions, yet failed to take any actions to address them, even though they resulted in Mr. Crummel becoming seriously ill on multiple occasions and exacerbated his preexisting schizophrenia. Defendants' Motion to Dismiss Plaintiff's claim of conditions of confinement claim should likewise be denied.

### D. Plaintiff's Complaint Alleges Sufficient Facts to Support a *Monell* Claim Against PrimeCare Defendants.

PrimeCare Defendants further argue that the *Monell* claim against them should be dismissed. In order to recover under a Section 1983 *Monell* claim, a

plaintiff must: (1) identify a policy or custom that deprived her of a federally protected right, (2) demonstrate that the municipality, by its deliberate conduct, acted as the "moving force" behind the alleged deprivation, and (3) establish a direct causal link between the policy or custom and the plaintiff's injury. *Bd. of the Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997); *Monell v. Dep't of Soc'l Serv's of N.Y.*, 436 U.S. 658 (1978). A municipal "policy," for purposes of Section 1983, is a statement, ordinance, regulation, or decision officially adopted and promulgated by a government body's officers. *See Berg v. County of Allegheny*, 219 F.3d 261, 275 (3d Cir. 2000) (policy results when a decisionmaker with final authority issues an official proclamation, policy, or edict). A "custom," while not formally adopted, may result in liability if the "relevant practice is so widespread as to have the force of law." *Id.* at 404. A private contractor for a municipality may be held liable for constitutional violations if it has a custom or policy exhibiting deliberate indifference to a prisoner's serious medical needs. *Henry v. Buskirk*, No. 08-1348, 2011 WL 767540, at *4 (E.D. Pa. Feb. 24, 2011) (citing *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 583-84 (3d Cir. 2003); 436 U.S. at 690-92).

Plaintiff has alleged that Mr. Crummel was seen by a number of PrimeCare practitioners on multiple occasions, all while he was exhibiting visible and distressing symptoms of his SJS/TEN, hypothermia, and schizophrenia, and that these symptoms were repeatedly not treated or addressed by practitioners. Plaintiff

has alleged that due to this lack of treatment, Mr. Crummel's lethal condition of SJS/TEN went undiagnosed and his symptoms increased for several weeks until Mr. Crummell required hospitalization. By the time Mr. Crummell was hospitalized at UPMC on December 19, his condition had gotten so dire that he was bradycardic, hypotensive, and had a had a core body temperature of 85 degrees Fahrenheit. Further, Plaintiff has alleged that PrimeCare providers refused to permit Mr. Crummel's transfer to a specialist burn unit at Mercy Hospital for treatment, contrary to the recommendations of providers at UPMC. A month later, the day before he died, multiple PrimeCare employees observed that Mr. Crummel was unresponsive and yet nothing was done until the following morning, by which point it was too late. This all stemmed from PrimeCare's medical staff's deficient monitoring and treatment of Mr. Crummel's symptoms over time, which Plaintiff alleges stemmed from their policies and practices. Further, Plaintiff has alleged that due to their unconstitutional policies and practices, none of the medical providers took any steps to have Mr. Crummel moved from his cell, despite repeatedly witnessing the cell's frigid and filthy conditions, which exacerbated his SJS/TEN and pneumonia. These failings exhibited deliberate indifference to Mr. Crummel's serious, and ultimately fatal, medical condition, and resulted directly from PrimeCare employees' failings in accordance with their policies, practices, and customs. Plaintiff has sufficiently alleged a *Monell* claim against PrimeCare to proceed at this stage.

### E. Plaintiff's Complaint Alleges Sufficient Facts to Support a Punitive Damages Claim.

Pennsylvania law allows for punitive damages where the defendant's conduct is outrageous, willful, wanton, or reckless. *See Hutchison v. Luddy*, 870 A.2d 766, 770 (Pa. 2005). "A jury may be permitted to assess punitive damages in an action under § 1983 when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 54 (1983).

Moreover, state of mind – including the state of mind necessary to be culpable for punitive damages – may be alleged generally. *See* Fed. R. Civ. P. 9(b). In that regard, "courts have deemed such motions to dismiss punitive damages claims to be premature and inappropriate where, as here, the complaint alleges reckless conduct." *See Harvell v. Brumberger*, No. 3:19-CV-2124, 2020 WL 6947693, at *8 (M.D. Pa. Nov. 4, 2020). This is "because the question of whether punitive damages are proper often turns on the defendants' state of mind, [and . . .] frequently cannot be resolved on the pleadings alone but must await the development of a full factual record at trial." *Id. Harvell* was a motor vehicle accident, diversity jurisdiction case. *Id.* at *7. In denying the defendants' motion to dismiss plaintiff's claim for punitive damages, the Court noted that, while "defendants often invite courts to dismiss these punitive damage claims[,]" "such invitations, while frequently made by defendants, are rarely

embraced by the courts." *Id.* at *8 (citing various denials of motions to dismiss punitive damages claims).

Here, Plaintiff's Complaint is replete with allegations sufficient to support a finding of recklessness or outrageousness. The Court need look no further than the freezing conditions of Mr. Crummel's cell, and his resultant hypothermia, which caused his death, to advance this claim. Moreover, Defendants fail to address the pleading standard and associated posture, because recklessness is state of mind, it may be averred generally and is not appropriate for dismissal at the pleadings stage. Just like other "courts have deemed such motions to dismiss punitive damages claims to be premature and inappropriate where, as here, the complaint alleges reckless conduct[,]" so too should this Honorable Court, where Plaintiff has pled recklessness. As such, the Court should deny Defendants' Motion to Dismiss Plaintiff's claim for punitive damages.

## V.    CONCLUSION

For the reasons set forth herein, the Court should deny the PrimeCare Defendants' Motion to Dismiss.

**KLINE & SPECTER, P.C.**

Date: <u>May 6, 2024</u>          By:    <u>*/s/ Benjamin O. Present*    </u>
                                **THOMAS R. KLINE, ESQ.**
                                **BENJAMIN O. PRESENT, ESQ.**
                                **HELEN A. LAWLESS, ESQ.**
                                1525 Locust Street
                                Philadelphia, PA 19102
                                215-772-1000 phone
                                215-792-5589 fax
                                *Attorney for Plaintiff*