**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JIMMY LEE CRAWFORD, as** | : | **CIVIL ACTION NO. 1:23-CV-1380** |
| **Administrator of the estate of** | : | |
| **JAMAL CRUMMEL, deceased,** | : | **(Judge Neary)** |
| | : | |
| **Plaintiff** | : | |
| **v.** | : | |
| | : | |
| **DAUPHIN COUNTY *et al.*,** | : | |
| | : | |
| **Defendants** | : | |

## <u>MEMORANDUM</u>

There is no doubt that the allegations in this case are tragic. A man died while incarcerated at Dauphin County Prison ("DCP"), and, accepting the factual allegations as true, it is plausible that some measure of liability exists in this case. At the same time, this case is now over three years old and still in the pleading stage. Plaintiff Jimmy Lee Crawford, as Administrator of the estate of Jamal Crummel, has had numerous opportunities to plead legally cognizable claims and is now seeking permission to file a fourth amended complaint in this matter. The court will once more narrow the claims at issue and close the pleadings in this case.

After reviewing all the pending motions and the briefing in support and in opposition thereto, the court will allow *one* final amended complaint in this matter, subject to the limitations set forth in this opinion.

## I. Factual Background & Procedural History

While the parties are undoubtably familiar with the facts of this case, in order to contextualize the court's rulings on the pending motions, the court will again set forth the facts as alleged by Crawford.

### A. Factual Background

On September 15, 2021, Jamal Crummel was arrested for various charges and detained at DCP. (Doc. 90 ¶ 14). This was not Crummel's first incarceration at DCP and some DCP personnel were familiar with Crummel and the fact that he had schizophrenia. (Id. ¶¶ 15, 17).

Crummel's stay at DCP involved troubles from the very beginning. During intake, Mildred Montalvo, MA, noted Crummel was experiencing mental health issues for which he had been hospitalized and been prescribed Haldol. (Id. ¶¶ 16-17). DCP initially placed Crummel on suicide watch. (Id. ¶ 19). A week after intake, Crummel was evaluated by Shade Crawford, MA, and Robert Nichols, Psy.D, and removed from suicide watch. (Id. ¶ 21). A few days later, Crummel contracted COVID-19. (Id. ¶ 22). He had low oxygen levels and was taken to UPMC Harrisburg for the first of what would be three occasions during this particular stay at DCP. (Id.). A few days after returning to DCP from UPMC Harrisburg, on November 11, 2021, Crummel made a sick call request regarding a rash, tenderness, and bleeding in his scrotum area. (Id. ¶ 24). In response, he was seen by PrimeCare Medical employee Marielle Ritchie who did not examine Crummel, but prescribed

2

Bacitracin. (Id. ¶¶ 25-26). Despite the prescription, no one ever approved the order and Crummel never received Bacitracin. (Id. ¶ 29).

As the weeks passed, Crummel's mental health continued to deteriorate. On December 13, 2021, Cheree Sultzbach, LPN, noted Crummel was purposefully flooding his cell with water to the point that the water was leaking out under the cell door and was severely agitated and not responding to external stimuli. (Id. ¶ 34). At this time, Crummel was also covered in feces and urine, and his cell was not adequately heated. (Id. ¶ 40). Three days later, Sultzbach, Susan Deloe, LPN, and Lauri Case, PMHNP-BC, reported Crummel's cell having a pungent smell, there being vomit, food, urine, feces and water on the floor, and also that his physical health was rapidly declining. (Id. ¶ 40). Crummel's blood pressure was 188/102, his heart rate was 56 bpm, and he was cold to the touch. (Id. ¶ 41). As a result, Crummel was taken back to UPMC Harrisburg, but stayed there less than 24 hours before being returned to DCP. (Id. ¶ 42).

By December 17, 2021, Case noted Crummel's cell was still flooded and scattered with food debris. (Id. ¶ 43). Two days later, PrimeCare Medical Providers Tia Drabich and Stephanie Deitz, RN, examined Crummel and discovered he had slurred speech, dry oral mucosa, macerated skin on his hands and feet, incontinence, tachycardia, was breathing abnormally, and smelled of urine. (Id. ¶ 46). Someone passed along the status of Crummel's condition to PrimeCare Medical, Inc. COO Todd Haskins via email before Crummel was transferred to UPMC Harrisburg for the third time. (Id. ¶ 49). The hospital noted Crummel was

bradycardic (had a slow heart rate), hypotensive (abnormally low blood pressure), appeared physically ill, and had a core body temperature of 85 degrees Fahrenheit. (Id. ¶ 50).

After examining Crummel, doctors determined he had a host of ailments. For one, he had cherry red non-blanching rash on his medial thighs, tip of his penis, buttocks, and lower back region, and his skin was sloughing on his bilateral wrists and feet. (Id. ¶ 52). Additional testing indicated Crummel had an acute kidney injury and leukopenia, abnormal blood glucose, lactic acid, c-reactive protein and creatine readings, and Systematic Inflammatory Response Syndrome ("SIRS"), which is an exaggerated defense response of the body to a noxious stressor such as infection or acute inflammation. (Id. ¶¶ 53-54). Though Crummel had made a sick call request about his rash in November 2021, Nicole Gallup informed UPMC Harrisburg only that he had been incontinent and smelled of urine; she told the hospital that no one from DCP was aware of any rash on Crummel. (Id. ¶ 57). UPMC doctors later determined Crummel's rash was Stevens-Johnson Syndrome/Toxic Epidermal Necrolysis ("SJS/TEN"). (Id. ¶ 59). From December to January, Crummel spent a total of 36 days at UPMC Harrisburg and returned to DCP on January 24, 2022. (Id. ¶ 63).

Conditions in DCP were cold in January and Crummel's cell still did not have separate heating. (Id. ¶¶ 64-65). By late January, Crummel became delusional and stopped taking his medications. (Id. ¶¶ 69-73). Just before 8:00 a.m. on January 31, Dr. Garrett L. Rosas, Psy.D, received a verbal update that Crummel's condition was

4

deteriorating and that a visit was needed. (Id. ¶¶ 74-75). So, he conducted a visual check on Crummel and noted he was lying face down, facing the interior wall (away from the window), partially covered as his right leg and a blanket were hanging partially off the bed. (Id. ¶ 74). Dr. Rosas believed there to be no signs of medical distress at the time despite the cold conditions of the cell, his knowledge that Crummel had just returned from the hospital after previously suffering hypothermia, and never having talked to Crummel. (Id. ¶¶ 74, 76). At approximately 9:30 a.m., staff noticed Crummel was unresponsive and not breathing. (Id. ¶¶ 79-80). Crummel was not revived and died of hypothermia on January 31, 2022. (Id. ¶¶ 81-82).

### B. Procedural History

Crawford initiated this suit on August 18, 2023, when he filed the original complaint. (Doc. 1). On November 13, 2023, Crawford filed a first amended complaint as a matter of course in accordance with Rule 15. FED. R. CIV. P. 15(a)(1)(B). (Doc. 18). The various defendants then filed partial motions to dismiss the first amended complaint in accordance with Rule 12. (Docs. 24, 25, 27, 28, 37). Then, on January 17, 2024, Crawford's initial counsel requested to stay all deadlines as new counsel for the plaintiff would be making an appearance. (Doc. 43). This motion had the concurrence of all parties, (Id.), and was granted by the

court. (Doc. 45). New counsel for Crawford entered their appearances on January 19, 2024. (Docs. 46, 47).

On February 26, 2024, all parties reported they were ready to proceed, and Crawford's then-counsel specifically reported they would "respond to and oppose the pending Motions to dismiss within fourteen days of the Court's Order lifting the stay." (Doc. 52). On March 11, 2024, the court lifted the stay. (Doc. 53). Two weeks later, Crawford's then-counsel—without seeking consent of the parties or leave of the court—filed a second amended complaint. (Doc. 54). The court then denied the pending motions to dismiss as moot due to the new, second amended complaint. (Doc. 55). The defendants filed various motions to dismiss the latest complaint, and the court resolved those motions in an opinion issued in October of last year. (Doc. 78).

After that opinion was issued, present counsel entered their appearance for Crawford. (Docs. 86, 87). They then filed the third amended complaint. (Doc. 90). Once again, all defendants filed motions to dismiss. (Docs. 91, 92, 93). After being granted one extension of time, (Doc. 97), Crawford filed a responsive brief in opposition to only one defendant and a motion for leave to file a fourth amended complaint on his last day to respond to the motions to dismiss. (Docs. 100, 101). Crawford's main reason for filing an amended complaint was to include a Monell claim against Dauphin County[1] which was "inadvertently" left out of the third

---

[1] All complaints have alleged that Dauphin County "owned, operated, managed, maintained, and was otherwise responsible for the pretrial detainees at DCP" during all times relevant to this lawsuit. (E.g. Doc. 90 ¶ 5).

amended complaint. (Doc. 101 at ECF 2). He also agreed to withdraw several claims in the proposed amended complaint. (Id. at ECF 6-7). Briefing on the motion for leave to file an amended complaint is now complete and this matter is ripe for disposition.

## II.    Legal Standards

Under Federal Rule of Civil Procedure 15(a)(2), the court should grant a party leave to amend "when justice so requires." This is due to "the 'general policy embodied in the Federal Rules favoring resolution of cases on their merits.'" Mullin v. Balicki, 875 F.3d 140, 149 (3d Cir. 2017) (quoting Island Creek Coal Co. v. Lake Shore, Inc., 832 F.2d 274, 279 (4th Cir. 1987)). Leave to amend should be denied when there is "undue delay, bad faith or dilatory motive on the part of the movant; repeated failure to cure deficiencies by amendments previously allowed; prejudice to the opposing party; [or] futility." Id. "[P]rejudice to the non-moving party is the touchstone for the denial of an amendment." Id. at 150 (quoting Arthur v. Maersk, Inc., 434 F.3d 196, 204 (3d Cir. 2006)).

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of complaints that fail to state a claim upon which relief may be granted. See FED. R. CIV. P. 12(b)(6). When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."

7

Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (quoting Pinker v. Roche Holdings, Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002)).

Federal notice and pleading rules require the complaint to provide "the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Phillips, 515 F.3d at 232 (alteration in original) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). To test the sufficiency of the complaint, the court conducts a three-step inquiry. See Santiago v. Warminster Township, 629 F.3d 121, 130-31 (3d Cir. 2010). In the first step, "the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" Id. at 130 (alteration in original) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 675 (2009)). Next, the factual and legal elements of a claim must be separated; well-pleaded facts are accepted as true, while mere legal conclusions may be disregarded. Id. at 131-32; see Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009). Once the court isolates the well-pleaded factual allegations, it must determine whether they are sufficient to show a "plausible claim for relief." Iqbal, 556 U.S. at 679 (citing Twombly, 550 U.S. at 556). A claim is facially plausible when the plaintiff pleads facts "that allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 678.

III.    **Discussion**

While all defendants oppose granting leave to file a fourth amended complaint, only Dauphin County would face new claims if the court granted leave to amend. As for the other defendants, they largely oppose amendment based on the

arguments raised in their motions to dismiss. Ordinarily, the filing of an amended complaint would moot any pending motion to dismiss. Pippett v. Waterford Dev., LLC, 166 F. Supp. 2d 233, 236 (E.D. Pa. 2001) (citing Adams v. Goodyear Tire & Rubber Co., 1997 WL 833288, *1 (D.Kan. Dec.19, 1997)). However, it appears Crawford only really opposes Dr. Rosas's motion to dismiss; he appears to concede the points raised by Dauphin County and PrimeCare in their motions to dismiss. (See Doc. 101 at ECF 6-7) (agreeing to withdraw claims against Sultzbach and Ritchie, withdraw his deliberate indifference claims against Sultzbach and Ritchie, and withdraw Warden Briggs as an individual defendant). Crawford also only filed a brief in opposition to Dr. Rosas's motion to dismiss. (Doc. 100).

Given the above, the court will address whether Crawford may file an amended complaint to add claims against Dauphin County. Otherwise, the court treats Crawford as not opposing the other points raised in the motions to dismiss filed by the county and PrimeCare.[2] As to Dr. Rosas, because Crawford filed a timely brief in opposition to his motion to dismiss, and because Crawford had the opportunity to reply to those arguments in his brief in opposition to Crawford's request to file an amended complaint, the court finds that motion ripe for disposition and will address it in this opinion.

---

[2] The court also agrees with the merits of PrimeCare's motion to dismiss as well as the unopposed parts of Dauphin County's motion.

## A. Dauphin County

Beginning with Dauphin County, it asserts leave to amend should be denied because of previous opportunities to amend were already given, the failure to include a <u>Monell</u> claim in the third amendment complaint was a strategic ploy, the proposed complaint would cause undue prejudice, and because amendment would be futile. (Doc. 110 at ECF 5-8). None of these arguments are convincing.

First, the court does not discount the age of this case and the number of amendments already offered to Crawford. At the same time, the addition of the <u>Monell</u> claim against Dauphin County is not new; Crawford has alleged a <u>Monell</u> claim since the very first complaint. (Doc. 1 at ECF 33). This means Dauphin County has been on notice of this claim for years. Additionally, it was not until the fourth amended complaint that Dauphin County ever sought to dismiss the <u>Monell</u> claims levied against it. (<u>See</u> Docs. 26 at 1; Doc. 65 at 4). From this, the court finds that Crawford would gain no strategic benefit by omitting the claim from the third amended complaint. Rather, the court attributes the omission to carelessness rather than tactics. Given that a <u>Monell</u> claim against Dauphin County has been an argument of Crawford since the beginning of this case, and because the county had never objected to the claim before, the court finds no undue prejudice in allowing an amended complaint to revive that claim.

Nor would amendment of the complaint be futile. Denying an inmate a human need, such as warmth, can constitute a violation of the Eighth Amendment, specifically in situations with "a low cell temperature at night combined with a

failure to issue blankets." Wilson v. Seiter, 501 U.S. 294, 304 (1991). This is precisely what Crawford alleges in this case. (Doc. 90 ¶¶ 35, 39, 66, 88). He also alleges the prison issued warmer clothing to prison staff, which shows the county did know temperatures were a problem, and that the district attorney commented on the conditions inside the prison. (Id. ¶¶ 39, 85). At the pleading stage, these allegations are sufficient to establish a custom of Dauphin County being deliberately indifferent to the frigid conditions inside the prison causing constitutional harm to Crummel. See Hargrove v. City of Philadelphia, 671 F. Supp. 3d 595, 605 (E.D. Pa. 2023) (citing Wilson v. City of Philadelphia, 177 F. Supp. 3d 885, 908 (E.D. Pa. 2016)).

Turning to the last aspects of Dauphin County's motion to dismiss, the court agrees it already dismissed claims for punitive damages with prejudice and so those claims must be removed. Crawford v. Dauphin Cnty., No. 1:23-CV-1380, 2025 WL 3035173, at *10 (M.D. Pa. Oct. 30, 2025). The county has also moved to dismiss the wrongful death and survivorship claims against it because it is shielded by the Pennsylvania's Political Subdivision Tort Claims Act. The court agrees. Municipalities enjoy a default of protection from tort liability unless otherwise excepted and the court finds no exceptions apply to this case. See 42 Pa.C.S. §§ 8541, 8542. These claims will also be dismissed with prejudice.

### B. PrimeCare

Turning to PrimeCare's[3] position, Crawford agrees to withdraw his claims against Sultzbach and Ritchie. (Doc. 101 at ECF 6). Those claims will therefore be dismissed with prejudice. Additionally, Crawford agreed to remove claims for "deliberate indifference." (Id.). It is unclear if by doing so, he also meant to withdraw his claims for punitive damages, as deliberate indifference is a prerequisite for punitive damages. Crawford, 2025 WL 3035173, at *9. To make the issue clear, the court once again finds that since no claims of deliberate indifference survive, any claims for punitive damages against PrimeCare must be dismissed. With that, the court has granted the relief requested in PrimeCare's motion (Doc. 91) to dismiss and therefore finds PrimeCare would suffer no prejudice by granting Crawford one last opportunity to amend his complaint.

### C. Dr. Rosas

Finally, the court must address the claims levied against Dr. Rosas. In its prior order, the court dismissed Crawford's claims against Dr. Rosas because the complaint did not make a case for deliberate indifference or medical malpractice. Crawford, 2025 WL 3035173, at *7. Dr. Rosas asks the court to make the same findings with respect to the latest complaint. (Docs. 95 at 8-11; 109 at 7-8).

The court disagrees and finds Crawford's latest complaint does state adequate claims against Dr. Rosas. To see why, it is helpful to consider the

---

[3] One brief was filed jointly on behalf of PrimeCare, Sultzbach, and Ritchie, and so the court uses just "PrimeCare" to refer to the joint position of these defendants.

additional allegations contained in the latest complaint that were absent before. Crawford now alleges that Dr. Rosas was told Crummel "was deteriorating." (Doc. 90 ¶ 75). The complaint also says that when Dr. Rosas reviewed Crummel's medical records, he saw that Crummel had just returned from the hospital after being treated for hypothermia. (Id. ¶ 76). When he examined Crummel, his cell was once again "cold." (Id.).

These additional facts, if true, could establish claims of deliberate indifference and medical malpractice against Dr. Rosas. Per the latest complaint, Dr. Rosas was told Crummel's mental state was deteriorating, and that he had just returned from being treated for hypothermia once before. Yet, when he arrived, Dr. Rosas did not examine Crummel at all; he just looked at him. In this way, Dr. Rosas could be said to have known of and disregarded "an excessive risk to inmate health or safety," with respect to Crummel. Durham v. Kelley, 82 F.4th 217, 229 (3d Cir. 2023) (quoting Farmer v. Brennan, 511 U.S. 825, 837 (1994)). Further, the latest complaint explains that given the facts known to him about Crummel's mental state, Dr. Rosas had a duty to examine Crawford and failed to do anything, contributing to Crawford's death. (Doc. 90 ¶ 77). These allegations state a viable claim of medical malpractice under Pennsylvania law. See Mitzelfelt v. Kamrin, 584 A.2d 888, 891 (Pa. 1990). And because Crawford states adequate deliberate indifference and medical malpractice claims against Dr. Rosas, he may also assert

13

claims under the Wrongful Death Act, 42 Pa. C.S. § 8301, and the Survival Act, 42 Pa. C.S. § 8302. See Crawford, 2025 WL 3035173, at *7.

## IV.   Conclusion

This is now the second time the court has addressed the defendants' motions to dismiss. Although the court will allow one final amended pleading, Crawford has already had multiple opportunities to cure deficiencies in the pleadings. The amended complaint must contain all facts and claims upon which Crawford intends to proceed, and no further opportunity will be given to remedy any pleading defects. After more than three years of litigation, the pleadings must now close and the matter must proceed to the next stage of litigation.

/S/ KELI M. NEARY
Keli M. Neary
United States District Judge
Middle District of Pennsylvania

July 14, 2026

14